STATE v. MACKEY

[137 N.C. App. 734 (2000)]

STATE OF NORTH CAROLINA v. CHARLIE JAMES MACKEY

No. COA99-650

(Filed 2 May 2000)

**1. Evidence— expert testimony—usefulness to jury**

The trial court did not abuse its discretion in a cocaine prosecution by not admitting defendant's expert witness testimony on drug investigatory procedures where the only purpose of the testimony was to challenge the undercover procedures used in obtaining drugs from defendant, but the record already contained evidence regarding the procedures used in the undercover operation and that the undercover investigator had used the drugs from the buys. The jury had the ability to assess the investigator's credibility on its own.

**2. Evidence— offer of proof—denied—content of proffered testimony apparent**

There was no prejudicial error in a cocaine prosecution where the court excluded testimony from a defense expert on undercover procedures and refused to allow an offer of proof. Defense counsel forecast the content of the proposed testimony and defendant was not deprived of a trial record sufficient for appellate review.

Judge HORTON dissenting.

Appeal by defendant from judgment entered 5 November 1998 by Judge W. Russell Duke, Jr., in Superior Court, Hyde County. Heard in the Court of Appeals 30 March 2000.

*Wilkinson & Rader, P.A., by Steven P. Rader, for the defendant.*

*Michael F. Easley, Attorney General, by Douglas A. Johnston, Special Deputy Attorney General, for the State.*

WYNN, Judge.

A Hyde County jury found Charlie James Mackey guilty of Possession With Intent to Sell and Deliver Cocaine, and Sale and Delivery of Cocaine. On appeal, we find no error in his trial.

The State's evidence showed that Art Manning, a retired police officer, worked with undercover drug investigations throughout the

STATE v. MACKEY

[137 N.C. App. 734 (2000)]

State for over thirty years. On 15 November 1996, he assisted the Hyde County Sheriff's Department in an undercover drug operation by purchasing crack cocaine from the defendant on two separate occasions.

First, at approximately 6:00 p.m., the defendant asked Manning to step outside of a poolroom where he further asked "was he looking". Manning, understanding that "looking" indicated that a person wanted to purchase drugs or cocaine lines, replied that he was "looking." Manning then purchased two "20's,"—pieces of crack cocaine worth twenty dollars—from the defendant.

Second, at approximately 11:00 p.m., Darryl Shelby asked Manning to step outside of the same poolroom and like the defendant he further asked Manning if he was "looking." Manning responded that he was "looking" for "a couple of 50's"—pieces of crack cocaine worth fifty dollars each. Shelby stated, "As soon as my man gets back, I'll take care of you." At around 11:10 p.m., the defendant drove up in a 1994 Dodge van. Shelby told Manning, "Wait right here for me. We have got to go cut it up." After the men finished cutting the cocaine, Shelby got out of the van, walked up to Manning and stated, "Walk over to the van. My man C.J.'s got you two 50's." Manning walked over to the van and purchased the two "50's" from the defendant.

The defendant presented evidence that when Manning made the undercover purchases, he was neither accompanied by any of the officers with the Hyde County Sheriff Department neither wore any recording devices nor was he frisked by the officers. The defendant also presented evidence that Manning frequently smoked the drugs; shared the drugs with a paid confidential informant; and purchased drugs in one place, but labeled them for another place.

The defendant also attempted to tender Kenneth Johnson—an employee of Blackman Detective services and a retired police officer of 30 years—as an expert witness in drug investigation procedures. The following colloquy occurred during the trial:

THE COURT: Okay. Mr. Philbeck, tell me in your own words what you intend to elicit from this witness.

. . . .

MR. PHILBECK: Your Honor, for our case, and this is important, and we looked at the actual drug undercover operation here. Major Johnson has extensive experience, 30 years of experience

in this, and has taught. His experience I think could be unmatched in this state. He can talk about standards of drug investigations. He can talk about how they operate and what is a good undercover operation and what is a poor operation at the buy/sell level, at the informant level, buy/sell, from that end. . . . and, without Major Johnson testifying as to certain standards that are important and universal—it's not just a Raleigh thing; it's for any drug operation—he can help that jury understand. Without him, I can't argue to the jury what was a good investigation or · what was not good from the buy/sell level, and I got to have that covered in fairness to Mr. Mackey as far as what he faces. . . .

The trial court did not allow Johnson's testimony upon finding that the standard used in drug investigations was not a consequential fact that would aid the jury in its determination of the case.

From his convictions, the defendant appealed.

---

On appeal, the defendant contends that the trial court erred in refusing to: (1) allow Johnson to testify as an expert witness and (2) accept Johnson's testimony as an offer of proof to preserve the record for appellate review.

[1] First, the defendant argues that Johnson's testimony should have been admitted as expert testimony for drug investigation procedures.

The admissibility of expert witness testimony is governed by Rule 702 of the North Carolina Rules of Evidence.

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C-1, Rule 702 (1992); *see also State v. Bowers*, 135 N.C. App. 682, 522 S.E.2d 332 (1999).

"Usually, a determination of whether a witness is qualified as an expert is exclusively within the discretion of the trial court and will not be reversed absent a complete lack of evidence to support its ruling." *Bowers*, 135 N.C. App. at 685, 522 S.E.2d at 334-35. Nonetheless, an expert's testimony will only be admissible if the testimony is helpful to the jury. *See State v. Huang*, 99 N.C. App. 658, 663, 394 S.E.2d 279, 282 (1990); *see also State v. Mitchell*, 283 N.C. 462, 467, 196

STATE v. MACKEY

[137 N.C. App. 734 (2000)]

S.E.2d 736, 739 (1973) (stating the "essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies.")

> Evidence is relevant if it 'has any logical tendency, however slight, to prove the fact at issue in the case.'. . . It is relevant if it can assist the jury in 'understanding the evidence.'

*Huang*, 99 N.C. App. at 663, 394 S.E.2d at 283 (citations omitted).

In the present case, the record contained evidence that Manning purchased crack cocaine from the defendant on two separate occasions on 15 November 1996. This evidence was sufficient to prove the substantive offenses for which the defendant was charged—Possession With Intent to Sell and Deliver Cocaine and Sale and Delivery of Cocaine. *See* N.C. Gen. Stat. § 90-95(a)(1) (1993) (it is unlawful for any person to "manufacture, sell or deliver . . . a controlled substance. . . ." ).

The only purpose for admitting the proposed testimony was to challenge the undercover procedures used by Manning in obtaining the drugs from the defendant. However, the record already contained evidence that Manning used the drugs from the buys and evidence regarding the procedures used in the undercover drug operation. The jury had the ability, on its own, to assess Manning's credibility given this evidence. *See Huang*, 99 N.C. App. at 663, 394 S.E.2d at 283. Thus, the trial court's refusal to admit this testimony did not constitute an abuse of discretion.

[2] Next, the defendant argues that the trial court erred when it refused to allow him to make an offer of proof regarding Johnson's testimony, thereby depriving him of preserving a proper record for appeal.

"It is fundamental that trial counsel be allowed to make a trial record sufficient for appellate review." *State v. Brown*, 116 N.C. App. 445, 447, 448 S.E.2d 131, 132 (1994); *see State v. Rudd*, 60 N.C. App. 425, 427, 299 S.E.2d 251, 253 (1983).

> A judge should be loath to deny an attorney his right to have the record show the answer a witness would have made when an objection to the question is sustained. In refusing such a request the judge incurs the risk (1) that the Appellate Division may not

concur in his judgment that the answer would have been imma-
terial or was already sufficiently disclosed by the record, and (2)
that he may leave with the bench and bar the impression that he
acted arbitrarily.

*State v. Chapman*, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978).

In the case at bar, although the trial court did not allow Johnson
to testify, the trial court did give the defense counsel several op-
portunities during the trial to describe the content of proposed
testimony. For instance, the following dialogue took place during the
trial:

MR. PHILBECK: Okay. Your Honor, respectfully, could I make the
request that you hear from Major Johnson himself, just a brief
synopsis of what he would testify by way of his offer of proof just
to make sure that we have exactly what he's going to testify to on
the record? If you deny it, Your Honor, that's fine. I just want to
get it on the record that I—

THE COURT: Yes, I understand that. I have asked you to state—I
assume that you know what your witness is going to say on the
stand. Now, I don't want to—you know, to waste my time sitting
here listening to the procedures in Raleigh. I'm not going to do
that.

MR. PHILBECK: It's statewide procedures—

THE COURT: Or statewide procedures—Now, if he's going to
get up here and say that he waited too long, three and a half
hours is too long, before he delivered the dope to the sheriff
that's irrelevant.

MR. PHILBECK: That's part of what he would say, Your Honor.

THE COURT: Well, now, what is the other part? I've asked you to
tell me what he's going to say.

MR. PHILBECK: This control mechanism. This whole case—

THE COURT: Oh, the control mechanism.

MR. PHILBECK: Yes, sir. This whole case revolves from the State
the credibility of Mr. Manning.

THE COURT: What aspects of the control mechanism?

STATE v. MACKEY

[137 N.C. App. 734 (2000)]

MR. PHILBECK: Whether—how drugs, you know, one theory is that and there's some evidence that Mr. Manning was sharing some of the drugs or some drugs, however he received them, at some point in time from other drug dealers in this area. He denied that. The procedures that control this are put in place to prevent that from happening. I think the jury should hear that.

THE COURT: Mr. Philbeck, the Court is going to find that that would not assist the jury in any finding of fact. If the jury determine, finds as fact, that the undercover agent did in fact share controlled substances, which they have ample evidence before them to find if they wish to find that, then how is—I think by their own common sense they know that that's improper and would destroy the credibility of the undercover agent, and to have somebody to come in and testify to that, they don't need that. It's not going to be able to assist them in anything. They already know that's wrong. . . .

From this dialogue, we are able to determine that the defense counsel sufficiently forecasted the content of the proposed testimony. Therefore, if any error resulted from the trial court's refusal to allow Johnson to testify, such error was harmless and did not deprive the defendant of a trial record sufficient for appellate review.

The defendant received a fair trial, free from prejudicial error.

No error.

Judge SMITH concurs.

Judge HORTON dissents in a separate opinion.

Judge HORTON dissenting.

In this prosecution for the possession and sale of illicit drugs, the State relied on the testimony of a former police officer with 30 years of experience in undercover drug investigations. Defendant sought to attack the credibility of the State's witness through the testimony of Major Johnson, also a retired police officer with 30 years of experience. Defendant contended that the State's witness substantially departed from usual and customary undercover procedures, and that his testimony about drug purchases from defendant was suspect. The trial court found that Johnson's testimony would not assist the jury, and declined to allow defendant to place the testimony of Johnson on

the record. The majority hold that the trial court's refusal to allow Johnson's testimony was not an abuse of discretion, and the trial court's refusal to allow defendant to place the excluded testimony in the record was not prejudicial error. I respectfully dissent from both holdings.

When the trial court sustains an objection to a question, it is basic learning that the trial court ordinarily should permit counsel to place in the record the answer to the question so that an appellate court might properly review the action of the trial court. "Indeed, an exception to the action of the trial court will be worthless on appeal unless the answer is thus preserved." *State v. Chapman*, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978). Our Rules of Civil Procedure require that in civil cases tried before the jury, the trial court "on request of the examining attorney shall order a record made of the answer the witness would have given." N.C. Gen. Stat. § 1A-1, Rule 43(c) (1999). Certainly due process demands no less in a criminal trial.

Our Supreme Court ruled in *Chapman* that the failure of the trial court to allow counsel to complete the record was a "regrettable judicial mistake," but ruled that the trial court's error was not prejudicial because the witness had already "answered the question sufficiently to demonstrate the immateriality of the inquiry. . . ." *Chapman*, 294 N.C. 415, 241 S.E.2d 672. Here, the majority hold that defense counsel made a sufficient forecast of the expert testimony he sought to offer, so that any error by the trial court was not prejudicial. I cannot say on this record that the testimony of the expert witness would not have assisted the jury in assessing the credibility of the key witness for the State. The undercover witness for the State had worked in undercover drug investigations for more than 30 years. Testimony which apparently would have shown that, despite his long experience in such undercover investigations, the State's witness significantly departed from proper police procedure in making undercover drug buys, would seem to bear on both his credibility and the weight to be given his testimony by the jury. Because the excluded testimony is not before us, we cannot properly review the actions of the trial court in excluding the testimony. In these circumstances where there are serious questions about the relevancy and materiality of certain testimony, and the trial court's ruling prevents the defendant from bringing the proffered testimony before us for proper review, we should resolve all such threshold evidentiary questions in favor of the defendant and remand for a new trial. Accordingly, I vote to do so.