STATE OF NORTH CAROLINA v. CHARLIE JAMES MACKEY

No. 244A00

(Filed 6 October 2000)

**1. Evidence— expert testimony—relevance—usefulness to jury**

The trial court did not err in a cocaine prosecution by excluding the testimony of a defense expert on drug investigative procedures as irrelevant. The roles of the undercover officer and the Sheriff in this case require no expert explanation; the jury was perfectly capable of interpreting the State's evidence. Testimony regarding the credibility of a witness is not admissible and

defendant did not intend to elicit testimony addressing either material elements of the offenses charged or a material defense. Even assuming that the testimony was admissible under N.C.G.S. § 8C-1, Rule 702, the trial court has wide discretion in determining the admissibility of expert testimony and did not abuse that discretion in this case.

## 2. Evidence— offer of proof—not necessary—dialogue with court

There was no prejudicial error in a cocaine prosecution in the trial court's refusal of defendant's offer of proof where the dialogue of defense counsel and the court was sufficient to establish the essential content or substance of the witness's testimony.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 137 N.C. App. 734, 530 S.E.2d 306 (2000), finding no error in judgments entered 5 November 1998 by Duke, J., in Superior Court, Hyde County. Heard in the Supreme Court 14 September 2000.

*Michael F. Easley, Attorney General, by Douglas A. Johnston, Special Deputy Attorney General, for the State.*

*Steven P. Rader for defendant-appellant.*

WAINWRIGHT, Justice.

On 9 February 1998, Charlie James Mackey (defendant) was indicted for possession with intent to sell and deliver cocaine and the sale and delivery of cocaine. On 8 June 1998, defendant was again indicted for the same offenses in connection with a second sale of cocaine. Defendant was tried before a jury at the 2 November 1998 Criminal Session of Superior Court, Hyde County. On 5 November 1998, the jury found defendant guilty of all charges, and the trial court imposed consecutive sentences of ten to twelve months' imprisonment for each charge. Defendant appealed to the North Carolina Court of Appeals. On 2 May 2000, the Court of Appeals, with one judge dissenting, found no error. *State v. Mackey*, 137 N.C. App. 734, 530 S.E.2d 306 (2000). Defendant appeals to this Court from the decision of the Court of Appeals on the basis of the dissent.

The State's evidence at trial tended to show that on 15 November 1996, Art Manning (Manning), a retired police officer, was assisting the Hyde County Sheriff's Department. Manning was operating in an

unpaid, undercover capacity. Sheriff David Mason (Sheriff Mason) of Hyde County requested that Manning assist him with drug trafficking investigations within the jurisdiction. Pursuant to the "undercover campaign," Manning was instructed to purchase drugs from anyone who was selling them. Prior to his involvement with the Hyde County Sheriff's Department, Manning worked for thirty years with under-cover drug investigations throughout the state.

Operating with the Hyde County Sheriff's Department, Manning purchased crack cocaine from defendant on two separate occasions. During the evening of 15 November 1996, between 6:00 and 6:30 p.m., Manning entered Blount's Playground, a small bar and poolroom located between Swan Quarter and Engelhard. While playing pool with Ricky Spencer (Spencer), a paid confidential informant, defend-ant motioned for Manning to step outside. Spencer had previously introduced Manning and defendant to each other. Once outside, defendant asked Manning "was he looking," and Manning stated that he was. Manning understood that "looking" was terminology indicat-ing a desire to purchase drugs.

Manning walked with defendant to his light-blue 1994 Dodge van. Defendant entered the van, rolled down the window, and told Manning that he had some "20's," pieces of crack cocaine worth twenty dollars each. Manning stated, "I'll take a couple." Manning and defendant then drove down the road in separate vehicles. Thereafter, defendant pulled into a driveway, and Manning pulled onto the side of the road. Manning walked to defendant's van window, and defendant handed Manning "two off-colored white rock-like substances." Manning handed defendant two twenty dollar bills, at which time defendant departed in the direction of Blount's Playground.

After the transaction, Manning contacted Sheriff Mason and they met at a predetermined location at 9:30 p.m. Manning placed the sub-stances he purchased from defendant into an evidence bag that Sheriff Mason was holding. Manning then dictated a debriefing report. Sheriff Mason wrote down everything Manning reported. Manning told Sheriff Mason that defendant was wearing a blue and orange ball cap, a dark blue jacket, blue jeans, and white tennis shoes. Manning also described defendant as a black male, approxi-mately 27 years old, 70 inches tall, 160 pounds, with black hair, brown eyes and a medium build. Manning later testified that he had no doubt the person who sold him drugs was defendant.

STATE v. MACKEY

[352 N.C. 650 (2000)]

After completing the debriefing, Manning returned to Blount's Playground and engaged in a conversation with Darryl Selby (Selby). At approximately 11:00 p.m., Selby asked Manning to step outside. Once outside, Selby asked Manning if he "was looking." Manning stated that he was looking for "a couple of 50's," pieces of crack cocaine worth fifty dollars each. Selby stated, "As soon as my man gets back, I'll take care of you." At approximately 11:10 p.m., defendant arrived in the same 1994 Dodge van that Manning had seen defendant operating during the previous drug sale.

After defendant arrived, Selby stated, "Wait right here for me. We have got to go cut it up." Selby and defendant returned at approximately 11:29 p.m., in the same 1994 Dodge van. Selby exited the vehicle, walked to Manning and stated, "Walk over to the van. My man C.J.'s got your two 50's." When Manning walked to the van, defendant handed him a clear, small Ziplock bag containing two large and three small off-white rock-like substances. At 11:30 p.m., Manning handed defendant four twenty dollar bills and two ten dollar bills. After that transaction, Manning met with Sheriff Mason for another debriefing report at 2:30 a.m. on 16 November 1996.

At trial, Manning testified on cross-examination that he has an independent recollection of what took place on the evening of 15 November 1996, but he used the notes made by Sheriff Mason to be "absolutely accurate." Defendant's counsel elicited testimony from Manning that Hyde County is one of the toughest counties to "break into" as an undercover informant because "dope" is sold out of houses. However, Spencer, a confidential informant, was able to help him in this regard. Manning further testified that Spencer introduced him to defendant before the buy and that Spencer was the only person accompanying Manning on the night he purchased the drugs. Manning also testified that he was not shown photos of defendant before the buys, was not wearing any recording devices, did not use marked bills, and was not frisked by the Sheriff after the buys.

Defendant presented the following evidence about Manning's undercover activities and his personal drug use: that Manning smoked drugs, occasionally smoking drugs with Spencer, and that Manning purchased drugs from one person but labeled them as coming from another person.

On redirect examination, Manning testified that it is difficult to "work drugs" in Hyde County because people in the drug trade deal out of residences or make deliveries. Manning stated that you have to

know the drug dealers to "work drugs" successfully. Manning also explained that he did not use marked bills because, in order to maintain his cover and continue the operation, arrests could not be made immediately after the drug sales. Manning further testified that he did not give drugs to Spencer.

**[1]** In defendant's first assignment of error, he contends the Court of Appeals erred in affirming the trial court's refusal to allow Kenneth Johnson (Johnson) to testify as an expert witness. We disagree.

At trial, defense counsel attempted to tender Johnson, an employee of Blackmon Detective Services and a retired police officer of thirty years, as an expert witness in drug investigation procedures. The trial court did not allow Johnson's testimony. Defendant argues that the State's entire prosecution was based on the testimony of Manning and that defendant should have been able to attack Manning's credibility by offering expert testimony about undercover police procedures.

During the trial, the following dialogue occurred:

THE COURT: Okay. Mr. Philbeck [defense counsel], tell me in your own words what you intend to elicit from this witness.

. . . .

MR. PHILBECK: Your Honor, for our case, and this is important, and we looked at the actual drug undercover operation here. Major Johnson has extensive experience, 30 years of experience in this, and has taught. His experience I think could be unmatched in this state. He can talk about the standards of drug investigations. He can talk about how they operate and what is a good undercover operation and what is a poor operation at the buy/sell level, at the informant level, buy/sell level, from that end. He's been a part of this. He has extensive experience with implementation and coordination of five major undercover operations. These operations consisted of over 1532 arrests, one million dollar's [sic] worth of illicit drugs seized, and five hundred thousand dollar's [sic] worth of stolen property recovered. He organized and supervised the first major crimes task force unit while with the Raleigh Police Department. He has been involved—he's looked at his own officers and investigated his own officers. He's brought forth and investigated corruption with his own organization from officers who make buys and get so wrapped into it that they lose sight of what they're there for. He has extensive profes-

sional affiliations and professional certifications. He is an instructor of criminal justice training. He's been on numerous committees which deal[] with law enforcement, the drug investigation area. And, he has plenty of additional training, including the Narcotic Unit Commander School, I'd like to point out, from the University of Georgia. And, if you look at the purpose of witness testimony, expert witness testimony, it's to help the jury understand, and, without Major Johnson testifying as to certain standards that are important and universal—it's not just a Raleigh thing; it's for any drug operation—he can help that jury understand. Without him, I can't argue to the jury what was a good investigation or what was not good from the buy/sell level, and I got to have [sic] that covered in fairness to Mr. Mackey as far as what he faces. It goes totally to our theory of the case and it is very important that we have that. I'd be glad to submit a resume, if I could, of the [M]ajor, and you can see what his background and qualifications are.

THE COURT: Is that all you have?

MR. PHILBECK: Yes, sir.

MR. NORTON [prosecutor]: If Your Honor please, the question is not what this gentleman did in Raleigh, whether or not he investigated officers, but the question is what occurred in this case. He's talking about some standard that they teach in Raleigh or some community college that has no relevance to what we are trying here. He either bought dope from him or he didn't.

MR. PHILBECK: Your Honor, if I may address the Court. We have at issue the things like where Mr. Manning has testified that he had two or three operations going on at the same time. I don't have my notes handy right here—

THE COURT: Let me ask you this. Let me cut it to the chaff [sic]. Mr. Philbeck, I want you to tell me how this evidence that you're offering is relevant to the determination of a consequential fact in the litigation in this case.

MR. PHILBECK: Your Honor, it deals with standards; it deals with the mentality of Mr.—

THE COURT: That's not a consequential fact. . . . [Y]ou have got to show that it's relevant to the determination of a consequential fact in this case. If you'll just tell me what that is, I'll

allow it in. If you cannot tell me, I won't. I'll have the witness stand down, and we are going to go on with the case.

MR. PHILBECK: Your Honor, the consequential fact is whether . . . Mr. Mackey sold drugs to Mr. Manning.

THE COURT: Was this man present?

MR. PHILBECK: No, sir. . . . Mr. Manning testified as to what he thinks he saw. He gave a report some three and a half hours later . . . to the sheriff as to what he saw. He was also handling other cases within . . . that period of time. How do we know he has the information correct? How do you know he really saw Mr. Mackey? He testified that he wasn't really that familiar with Mr. Mackey before.

THE COURT: I just want to interrupt you just a minute. That is no [sic] consequential fact that's been mentioned yet. Now, they are all propositions that you are perfectly capable of submitting to the jury in a closing argument or elicit from testimony from people that were present[,] either in direct- or cross-examination, as you've done very well this morning. But insofar as this witness is concerned, I need to know the consequential fact that's going to aid the jury in the determination of this case.

MR. PHILBECK: And that's it, Your Honor. Standards. It's not a Raleigh thing, as Mr. Norton says. It's a universal standard and were they being met because those standards are to help ensure that the person that sells the drugs is actually the person who is charged, and that's a fact of consequence.

THE COURT: Well, Mr. Philbeck, the Court is going to find that the testimony that you have said that you want to elicit from this witness, I'm going to find that that testimony is irrelevant.

Rule 702 of the North Carolina Rules of Evidence governs the admissibility of expert witness testimony as follows:

If scientific, technical or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C.G.S. § 8C-1, Rule 702(a) (1999) (emphasis added).

Defendant argues that the seven-part standard for admission of expert evidence derived from *State v. Huang*, 99 N.C. App. 658, 663, 394 S.E.2d 279, 282-83, *disc. rev. denied*, 327 N.C. 639, 399 S.E.2d 127 (1990), applies in the instant case: (1) the witness' qualifications include knowledge, skill, experience, training, or education; (2) the testimony must be helpful to the jury; (3) the scientific technique upon which the opinion is based must be established and recognized; (4) the evidence must be relevant; (5) the evidence must pass the Rule 403 balancing test; (6) the evidence may be in the form of an opinion but may not state a legal conclusion; and (7) expert testimony regarding the credibility of a witness is not admissible.

We note at the outset that subsection (7) above specifically provides that testimony regarding the credibility of a witness is not admissible. See *id.* at 663, 394 S.E.2d at 283. Nonetheless, defendant contends that Johnson should have been allowed to testify for that very purpose.

This Court has previously summarized the Rules of Evidence governing admission of expert testimony as follows:

> "Expert testimony is properly admissible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences." *State v. Evangelista*, 319 N.C. 152, 163, 353 S.E.2d 375, 383 (1987). In applying the rule, the trial court is afforded wide discretion and will be reversed only for an abuse of that discretion. Further, under Rule 403 even relevant evidence may properly be excluded by the trial court if its probative value is outweighed by the danger that it would confuse the issues before the court or mislead the jury. Whether to exclude expert testimony for this reason also rests within the sound discretion of the trial court, which will be reversed only for an abuse of discretion.

*State v. Anderson*, 322 N.C. 22, 28, 366 S.E.2d 459, 463 (citations omitted), *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988); *accord State v. Harden*, 344 N.C. 542, 556, 476 S.E.2d 658, 665 (1996), *cert. denied*, 520 U.S. 1147, 137 L. Ed. 2d 483 (1997). We have also stated that the " 'essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies.' " *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599, 608, *cert. denied*, 522 U.S.

1001, 139 L. Ed. 2d 411 (1997) (*quoting State v. Mitchell*, 283 N.C. 462, 467, 196 S.E.2d 736, 739 (1973)).

Applying the foregoing principles to the present case, we agree with the majority opinion of the Court of Appeals that the trial court properly excluded the expert testimony proffered by defendant. The roles of Manning and the Sheriff require no expert explanation. The jury was perfectly capable of interpreting the State's evidence about the actions of defendant and the undercover officer. The Court of Appeals correctly determined that the jury had the ability, on its own, to assess the evidence, and that the trial court, therefore, did not abuse its discretion in excluding the testimony of Johnson. *Mackey*, 137 N.C. App. at 737, 530 S.E.2d at 309. Moreover, the expert's testimony would not have assisted the jury and might have confused the issues and resulted in a trial within a trial. As the Court of Appeals majority correctly stated:

> The only purpose for admitting the proposed testimony was to challenge the undercover procedures used by Manning in obtaining the drugs from the defendant. However, the record already contained evidence that Manning used the drugs from the buys and evidence regarding the procedures used in the undercover drug operation. The jury had the ability, on its own, to assess Manning's credibility given this evidence.

*Id.*

In the instant case, defendant was charged with several violations of N.C.G.S. § 90-95(a)(1), which makes it unlawful for any person to "manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." N.C.G.S. § 90-95(a)(1) (1999). The essential elements of N.C.G.S. § 90-95(a)(1) were established by the State's proof of the following facts: Defendant asked Manning if he wanted to purchase drugs. Thereafter, defendant sold two pieces of rock-like substance to Manning for forty dollars. Later that evening, defendant sold Manning five pieces of rock-like substance in exchange for one hundred dollars. The substances obtained from each transaction were later determined to be crack cocaine, a controlled substance.

Defendant intended to have Johnson testify regarding the standards of an undercover operation and proper investigative techniques. Defendant did not, however, intend to elicit testimony from the proposed expert witness addressing either material elements of the

**STATE v. MACKEY**

[352 N.C. 650 (2000)]

offenses charged or a material defense. Based on the above facts, the proposed testimony is irrelevant. Pursuant to Rule 702, no expert testimony as to the credibility of Manning would assist the trier of fact to understand the evidence or to determine a fact in issue. Moreover, "[t]his Court has repeatedly held that N.C.G.S. § 8C-1, Rule 608 and N.C.G.S. § 8C-1, Rule 405(a), when read together, forbid an expert's opinion testimony as to the credibility of a witness." *State v. Jones*, 339 N.C. 114, 146, 451 S.E.2d 826, 843 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995); *see State v. Aguallo*, 318 N.C. 590, 598, 350 S.E.2d 76, 81 (1986).

The fact at issue in the instant case was whether defendant violated N.C.G.S. § 90-95(a)(1). None of the proposed expert testimony would have been directed at the proof of this relevant fact. Moreover, no expert opinion on drug investigation standards was needed to show that a sale of cocaine took place. Rather, the proposed testimony would have shifted the focus of the trial from defendant's activities and sale of drugs to an irrelevant investigatory process which would potentially confuse the issues to the jury. We note that the trial court pointed out that Manning was permitted to testify, not as an expert, but because he observed the cocaine transactions that led to the arrest of defendant. Therefore, the trial judge properly recognized that defendant's challenge to the supposed deficiencies of the techniques used by Manning did not relate to any consequential fact in this case.

Assuming *arguendo* that the expert testimony is the sort permitted under Rule 702, the trial judge properly exercised his discretion. As we stated in *Anderson*, "the trial court is afforded wide discretion" in determining the admissibility of expert testimony and "will be reversed only for an abuse of that discretion." *Anderson*, 322 N.C. at 28, 366 S.E.2d at 463. No abuse of that discretion took place in this case. The trial court's decision was justified on the grounds that the testimony would not be helpful to the jury's understanding; it was irrelevant; it had insufficient probative value on the facts to be proved; and it violated the rule prohibiting expert testimony on a witness' credibility. Accordingly, this assignment of error is overruled.

[2] In defendant's second assignment of error, he contends the Court of Appeals erred in finding no error as to the trial court's refusal of defendant's offer of proof of the testimony of Johnson. We disagree.

We have recognized that

> in order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evident must be made to appear in the record and a specific offer of proof is required *unless the significance of the evidence is obvious from the record.* . . . [T]he essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred.

*State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (emphasis added); *accord State v. Hamilton*, 351 N.C. 14, 19, 519 S.E.2d 514, 518 (1999), *cert. denied*, —— U.S. ——, 146 L. Ed. 2d 783 (2000). Although it is always the better practice to excuse the jury and complete the record in open court through the words of the proposed witness, this Court has specifically stated that "there may be instances where a witness need not be called and questioned in order to preserve appellate review of excluded evidence." *Simpson*, 314 N.C. at 370, 372, 334 S.E.2d at 60, 61; *see State v. Chapman*, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978). We have also stated that "while the trial court denied full offer of proof, it allowed defense counsel to articulate what defendant's showing would have been by identifying witnesses and presenting a detailed forecast of evidence for the record." *State v. White*, 349 N.C. 535, 567, 508 S.E.2d 253, 273 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999).

In the instant case, the trial court did give defense counsel several opportunities to describe the content of the proposed testimony at issue. The following dialogue took place during the trial:

> MR. PHILBECK: Okay. Your Honor, respectfully, could I make the request that you hear from Major Johnson himself, just a brief synopsis of what he would testify by way of his offer of proof just to make sure that we have exactly what he's going to testify to on the record? If you deny it, Your Honor, that's fine. I just want to get it on the record that I—

> THE COURT: Yes, I understand that. I have asked you to state—I assume that you know what your witness is going to say on the stand. Now, I don't want to—you know, to waste my time sitting here listening to the procedures in Raleigh. I'm not going to do that.

> MR. PHILBECK: It's statewide procedures—

**STATE v. MACKEY**

[352 N.C. 650 (2000)]

THE COURT: Or statewide procedures—Now, if he's going to get up here and say that he waited too long, three and a half hours is too long, before he delivered the dope to the sheriff that's irrelevant.

MR. PHILBECK: That's part of what he would say, Your Honor.

THE COURT: Well, now, what is the other part? I've asked you to tell me what he's going to say.

MR. PHILBECK: This control mechanism. This whole case—

THE COURT: Oh, the control mechanism.

MR. PHILBECK: Yes, sir. This whole case revolves from the State the credibility of Mr. Manning.

THE COURT: What aspects of the control mechanism?

MR. PHILBECK: Whether—how the drugs, you know, one theory is that and there's some evidence that Mr. Manning was sharing some of the drugs or some drugs, however he received them, at some point in time from other drug dealers in this area. He denied that. The procedures that control this are put in place to prevent that from happening. I think the jury should hear that.

THE COURT: Mr. Philbeck, the Court is going to find that that would not assist the jury in any finding of fact. If the jury determine[s], finds as fact, that the undercover agent did in fact share controlled substances, which they have ample evidence before them to find if they wish to find that, then how is—I think by their own common sense they know that that's improper and would destroy the credibility of the undercover agent, and to have somebody to come in and testify to that, they don't need that. It's not going to be able to assist them in anything. They already know that's wrong.

We hold that this dialogue, along with the previously noted dialogue, is sufficient to establish the "essential content or substance" of the witness' testimony, *Simpson*, 314 N.C. at 370, 334 S.E.2d at 60, as well as its obvious irrelevance. Assuming *arguendo* that an offer of proof should have been allowed, we hold there is no reasonable possibility that the trial court's ruling affected the result at trial, and any error in this regard was harmless pursuant to N.C.G.S. § 15A-1443(a). This assignment of error is overruled.

We conclude that defendant received a fair trial, free from prejudicial error. For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.

