STATE OF NORTH CAROLINA v. MELVIN CHARLES KING

No. COA10-1237

(Filed 2 August 2011)

**1. Evidence—motion in limine—motion to suppress— definitions**

A pretrial motion to suppress is a type of motion in *limine*; a motion to suppress denotes the type of motion, while a motion in *limine* denotes the timing of the motion.

**2. Evidence—recovered memory—evidence suppressed— Rule 403**

The trial court did not abuse its discretion by granting defendant's motion to suppress evidence of a recovered memory where the trial court concluded that the proposed evidence and expert opinion had become so attenuated that they lacked probative value under N.C.G.S. § 8C-1, Rule 403, even if the test for admissibility was technically met. Although *Barrett v. Hyldburg*, 127 N.C. App. 95, requires expert testimony for repressed memory evidence to be admitted, the trial court must still perform its gate-keeping function.

HUNTER, ROBERT C., Judge, dissenting.

Appeal by the State from order entered 23 April 2010 by Judge John O. Craig, III in Moore County Superior Court. Heard in the Court of Appeals 13 April 2011.

*Attorney General Roy Cooper, by Asst. A. G. Anne M. Middleton, for the State-appellant.*

*VanCamp, Meacham & Neuman, PLLC, by Patrick Mincey and Eddie Meacham, for defendant-appellee.*

BRYANT, Judge.

Where the trial court concluded, pursuant to N.C. Gen. Stat. § 8C-1, Rule 403, that the probative value of the evidence sought to be admitted—expert testimony regarding repressed memory—was outweighed by the prejudicial effect of the evidence, confusion of issues, or misleading the jury, we find no abuse of discretion and affirm the trial court's grant of defendant's motion to suppress.

### Facts and Procedural History

On 12 September 2005, Melvin Charles King (defendant) was indicted for first degree rape. On 21 September 2009, defendant was indicted for felony child abuse based on a sexual act upon a child, incest, and indecent liberties with a child. Defendant's indictments were all based on an allegation that defendant had engaged in sexual intercourse with his daughter on 10 March 1996.

Prior to trial, on 28 January 2010, defendant filed a "motion to suppress evidence of repressed memory, recovered memory, traumatic amnesia, dissociative amnesia, psychogenic amnesia, and other synonymous terminology" pursuant to N.C. Gen. Stat. 15A-977. Defendant's motion stated that based on discovery provided by the State, he expected the State to call expert witnesses who would testify "as to scientific reasons about why the alleged victim failed to report the alleged crime for nine years." The motion argued, in pertinent part, the following:

9. There are extreme problems surrounding the existence of dissociative amnesia and determining the existence of repressed memory which, if admitted as expert evidence, would unfairly prejudice the Defendant at trial.

10. Theoretical processes such as "repressed memory," "recovered memory," "traumatic amnesia," "dissociative amnesia," "psychogenic amnesia" are highly unreliable, are subject to unknown error rates, and are clearly not able to assist the trial court, and are likely to mislead the legal system.

. . .

15. Currently, there is no credible scientific evidence, no general acceptance in the relevant scientific community, and no known error rates for any of these four extraordinary claims.

16. Accordingly, any testimony about the alleged victim's dissociative memory should be excluded at trial because it fails the first element of the *Howerton* test for admissible scientific evidence. [*Howerton v. Arai Helmet, Ltc.*, 358 N.C. 440, 597 S.E.2d 674 (2004).]

A pretrial hearing on defendant's motion to suppress was held on 12 and 13 April 2010. During the pretrial hearing, the State produced as its expert witness, Dr. James Chu, and defendant produced as its expert witness, Dr. Harrison G. Pope, Jr. Both expert witnesses testi-

fied regarding whether repressed memory was generally accepted in the scientific community. Dr. Chu testified that in his practice, he had seen numerous patients with repressed memories and that the concept of repressed memory was greatly debated between scientists, including researchers and clinicians. He believed that "a clinician's training, perspective, and experience [were] crucial when evaluating repressed memory because clinicians regularly see a wide variety of patients who have recovered memories where researchers only have access to a very narrow group of patients." Dr. Pope testified that the theory of repressed memory was not valid and "remains merely a hypothesis because it has not been accepted by the general scientific community."

On 23 April 2010, the trial court entered an order granting defendant's motion to suppress. The trial court found the following, in pertinent part:

In considering reliability of a novel scientific method or theory, Howerton[1] instructs the trial court initially to consider other jurisdictions' treatment of the theory. 358 N.C. at 459, 597 S.E.2d 687. In the case of repressed memory, the case law provided by both the State and Defendant indicates various jurisdictions with very different evidentiary standards have both admitted and excluded repressed memory evidence.

. . .

Accordingly, this court, pursuant to the instruction of Howerton, has considered the pertinent authority in other jurisdictions but concludes the weight of that consideration is insufficient to persuade the court of the reliability and relevance of repressed memory theory compared to other considerations Howerton requires the court to make.

. . .

The existence of this significant split in the general scientific community prevents the court from concluding that the theory of

1. In Howerton, our Supreme Court relied on State v. Goode, 341 N.C. 513, 461 S.E.2d 631 (1995), to establish the framework for determining the admissibility of expert testimony under N.C. Gen. Stat. § 8C-1, Rule 702 instead of adopting the standard adopted by federal courts in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 125 L. Ed. 2d 469 (1993). The Supreme Court "set forth a three-step inquiry for evaluating the admissibility of expert testimony: (1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" Howerton, 358 N.C. at 458, 597 S.E.2d at 686 (internal citations omitted).

repressed memory is generally accepted in the relevant scientific community. A theory cannot be "deeply controversial" and "accepted" at the same time. The court finds that the skepticism among major professional organizations and leading scientists regarding repressed memory demonstrates that there is a significant dispute between experts that goes against a finding of general acceptance.

. . .

Howerton does not go so far as to require the expert testimony to be proven conclusively reliable or indisputably valid before it can be admitted into evidence. Even though great debate continues amongst the relevant scientific community, the court concludes the theory of repressed memory may still be generally accepted enough to satisfy Howerton's reliability element. Accordingly, the court's application of Howerton's three elements cannot be satisfied by merely considering other jurisdictions' treatment and the relevant scientific community's acceptance of the theory alone. Instead, the court must continue to analyze repressed memory theory under Howerton by determining whether the proposed evidence is relevant.

. . .

Howerton explains trial courts have "wide latitude of discretion when making a determination about the admissibility of expert testimony." 348 N.C. at 458, 597 S.E.2d 686 (quoting State v. Bullard, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984) (quotations omitted). The trial court must always be satisfied that the expert's testimony is relevant. Id. (citing State v. Goode, 341 N.C. 513, 529[,] 461 S.E.2d 631, 641 (1995)).

. . .

In addition to the foregoing principles of reliability under Rule 702, the court has inherent authority to limit the admissibility of all evidence, including expert testimony, under North Carolina Rule of Evidence 403.

. . .

[T]he court is troubled by the probative value of repressed memory theory and methodology, due to three specific flaws revealed in the hearing. First . . . [a]ccording to Dr. Chu, the clinician's primary goal is to treat the patient and not to determine the truth of

the memory the patient describes, or to determine the validity of the memory. . . . Second, Dr. Chu testified that the core issue of reliability depends on the therapist who examines the patient. The court finds it to be problematic that the therapist's evaluation of the validity of the recovered memory depends on what kind of notes the therapist takes, whether the therapist asks suggestive questions, and most importantly, how much training and what quality of training the therapist possesses. The court finds these subjective characteristics of the individual therapist diagnosing the repressed memory are not reliable safeguards for determining and assuring the veracity of the repressed memory. . . . Finally, the court finds the uncertain authenticity of recovered memories is one of the many ways making the use of recovered memories fraught with problems of potential misapplication.

. . .

[E]ven if the three-prong Howerton test is technically met, the proposed evidence and expert opinion have become so attenuated that they lack probative value under Rule 403.

The trial court concluded that even though the evidence of repressed memory was relevant, its probative value was outweighed by other considerations and therefore, would not be admitted. It stated the following:

[T]he State met its burden of proof to satisfy the third prong of the Howerton test that repressed memory is relevant evidence. However, in its discretion, the court concludes the probative value of the evidence concerning repressed memory theory that the State seeks to admit is outweighed by the prejudicial effect of the evidence, confusion of issues, or misleading the jury, pursuant to N.C.G.S. § 8C-1, Rule 403.

From the 23 April 2010 order granting defendant's motion to suppress, the State appeals.

[1] As a preliminary matter, we note that the State filed a petition for writ of certiorari, stating that although defendant filed a motion to suppress pursuant to N.C. Gen. Stat. § 15A-977, titled "Motion to suppress evidence in superior court[,]" and the trial granted the motion pursuant to N.C. Gen. Stat. § 15A-977, the State was "concerned that defendant's motion might simply have been a motion in limine to exclude expert witness testimony rather than a true motion to suppress."

A pretrial motion to suppress is a type of motion in limine. *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000). Further, a motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial"; a motion to suppress is "[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial." *Black's Law Dictionary* 1038-9 (8th ed. 2004).

> Article 53 of Chapter 15A deals with a specific type of a motion *in limine* and that is the motion *in limine* to suppress evidence. Two situations are specified in which the motion to suppress *must* be made *in limine*. The motion to suppress must be made before trial (*in limine*) when the Constitution of the United States or the Constitution of the State of North Carolina requires that the evidence be excluded and when there has been a substantial violation of Chapter 15A. . . . The fact that it is a motion to suppress denotes the type of motion that has been made. The fact that it is also a motion *in limine* denotes the *timing* of the motion regardless of its type.

*State v. Tate*, 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980). Defendant's motion "was, by definition, both of these things because it was a motion before trial (*in limine*) to suppress." *Id.* at 184, 265 S.E.2d at 226.

> When the motion to suppress *must* be and is made *in limine* or can be and is made *in limine*, then the defendant can appeal if the motion is denied and he enters a plea of guilty, G.S. 15A-979(b), and the State can appeal if the motion is granted, G.S. 15A-1445 (which refers to G.S. 15A-979).

*Id.* at 183, 265 S.E.2d at 226. Therefore, because, pursuant to N.C.G.S. § 15A-1445(b) and § 15A-979, the State's appeal is properly before us as a matter of right, we dismiss the State's petition for writ of certiorari.[2]

[2] In its sole issue brought forth on appeal, the State argues that because this Court has previously held that evidence of delayed recall of traumatic events is required to be accompanied by expert witness testimony capable of explaining the phenomenon of repressed memory in order to assist the jury, the trial court in the instant case,

---

2. Although defendant's motion to suppress was made and granted pursuant to G.S. 15A-977, the analysis as set forth in *Tate* is equally applicable to a motion to suppress pursuant to G.S. 15A-979.

abused its discretion in granting defendant's motion to suppress expert testimony regarding repressed memory. We disagree.

"The exclusion of evidence under the Rule 403 balancing test lies within the trial court's sound discretion and will only be disturbed 'where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Jacobs*, 363 N.C. 815, 823, 689 S.E.2d 859, 864 (2010) (citation omitted). An "[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Ward*, 364 N.C. 133, 139, 694 S.E.2d 738, 742 (2010) (citation omitted).

The trial court concluded that although the repressed memory evidence was relevant, "the probative value of the evidence concerning repressed memory theory that the State seeks to admit is outweighed by the prejudicial effect of the evidence, confusion of issues, or misleading the jury, pursuant to N.C.G.S. § 8C-1, Rule 403." The State argues that in light of our holding in *Barrett v. Hyldburg*, 127 N.C. App. 95, 487 S.E.2d 803 (1997), the trial court's ruling in the instant case constitutes an abuse of discretion. We disagree.

In *Barrett* our court noted:

The trial court's order regarding defendant's motion *in limine* essentially contained two determinations: 1) plaintiff's testimony as to her allegedly repressed memories was precluded absent accompanying expert testimony explaining to the jury the phenomenon of memory repression, and 2) expert testimony regarding repressed memory would be excluded because of the lack of scientific assurance of the reliability of repressed memory as an indicator of what has actually transpired in the past.

*Id.* at 99, 487 S.E.2d at 806. Because the *Barrett* plaintiff's brief on appeal addressed only the first determination by the trial court, our court did not reach the second determination whereby the trial court actually excluded expert testimony. Our Court of Appeals acknowledged as much when it stated:

In conclusion, we affirm the trial court's decision that plaintiff may not proceed with evidence of her alleged repressed memories of childhood sexual abuse without accompanying expert testimony on the phenomenon of memory repression, and remand the case for further proceedings. We are cognizant the trial court's order purports to exclude such testimony at trial as scientifically

unreliable, but reiterate that a motion *in limine* decision is one which a trial court may change when the evidence is offered at trial. Such further ruling *and* a final judgment on plaintiff's cause of action are due before this case again comes to our Court for review.

*Id.* at 101, 487 S.E.2d at 807 (internal citations and quotation marks omitted).

Therefore, in *Barrett,* the trial court had already made a pretrial ruling that the expert testimony regarding repressed memory was unreliable and would be excluded because of the lack of scientific assurance of its reliability. Yet this issue, clearly noted by our Court of Appeals and the question that is squarely before us today, was not presented to and thus not decided by the *Barrett* Court.

We agree with the state that *Barrett* held that repressed memory testimony "must be accompanied by expert testimony on the subject of memory repression so as to afford the jury a basis upon which to understand the phenomenon and evaluate the reliability of testimony derived from such memories." *Id.* at 101, 487 S.E.2d at 806. Nevertheless, it seems clear that *Barrett* stood for the proposition that *if evidence of repressed memories is received, it must be accompanied by expert testimony* because it "transcends human experience." (emphasis added). Further, it seems clear that the *Barrett* court recognized that the trial court must still perform its gatekeeping function. If we were to adopt the State's view of the applicability of *Barrett* to the instant case, we would be constrained to hold that a trial court has no discretion where repressed memory testimony is at issue and that a trial court is required to allow expert testimony as a matter of law based on *Barrett.* Such a holding would totally obviate the trial court's gatekeeping function and remove its discretion to weigh the admissibility of evidence under Rule 403. We cannot and will not entertain such a view. To do so would run afoul of well-settled principles of our law governing the admissibility of expert testimony. "[A] trial court has inherent authority to limit the admissibility of all evidence, *including expert testimony,* under [Rule 403]." *Howerton,* 358 N.C. at 462, 597 S.E.2d at 689. *See State v. Mackey,* 352 N.C. 650, 657, 535 S.E.2d 555, 559 (2000) (even relevant expert evidence may properly be excluded under Rule 403 "if its probative value is outweighed by the danger that it would confuse the issues before the court or mislead the jury.")

While the Supreme Court in *Howerton* may have relaxed what was once a more rigid approach to the qualification and admissibility

of expert testimony, respect for the gatekeeping functions inherent in the trial courts was maintained. *See e.g. Crocker v. Roethling*, 363 N.C. 140, 149, 675 S.E.2d 625, 632 (2009) (where, upon determining that it was unclear whether the expert whose testimony had been excluded by the trial court, had the requisite expertise to testify to the subject at hand (medical malpractice), the case was remanded to the trial court with instructions to conduct a voir dire on the admissibility of the proposed expert opinion testimony).

Further, while it did not set forth the clearest mandate, the Supreme Court in *Crocker* emphasized that trial courts must decide preliminary questions regarding the qualifications of experts to testify or regarding the admissibility of expert opinion. *Crocker*, 363 N.C. at 144, 675 S.E.2d at 629. Analogizing *Crocker* to our instant case, we find that the trial court conducted in essence two preliminary assessments: the qualifications of the experts, i.e. their competency to testify; and the admissibility of their expert testimony, separate and apart from the qualifications. The trial court decided based on *Howerton*, that the experts were competent to testify to the subject matter but that their expert opinions would have to be excluded as too prejudicial, too confusing, and potentially misleading to the jury. In any event, it is clear the trial court's preliminary assessments of the experts are to be reviewed under an abuse of discretion standard. *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686.

Therefore, the question before us, whether the trial court abused its discretion in excluding repressed memory evidence as prejudicial, confusing or misleading under Rule 403, was not before the *Barrett* court. In the instant case, the trial court granted defendant's motion to suppress, excluding expert testimony regarding repressed memory under Rule 403, deeming the probative value of the evidence to be outweighed by its prejudicial effect.

The record before us fails to demonstrate that the trial court abused its discretion. A careful review of the record shows that the trial court made detailed and specific findings of fact regarding repressed memory evidence following a two day-hearing. After recognizing that the test for determining the reliability of a new scientific method of proof was controlled by the North Carolina Supreme Court in *Howerton*, the trial court considered authority from other jurisdictions. The trial court also considered the expert testimony that was produced during the two-day pre-trial hearing and found that "there [was] a significant dispute between experts that goes against a find-

ing of general acceptance." The trial court found the following to be problematic: (1) That when a patient undertakes therapy and repressed memory becomes a possible explanation for why a "patient suddenly remembers long-forgotten events," the "primary goal is to treat the patient and not to determine the truth of the memory the patient describes, or to determine the validity of the memory."; (2) That the therapists' evaluation of the validity and reliability of the recovered memory depends on such factors as what kind of notes the therapist takes, whether suggestive questions are asked and the quality and quantity of training the individual therapist possesses; and (3) That there are numerous alternate possible explanations for recovered memories that justify a patient's behavior such as "pseudo-memory, distorted memory, confabulation, and self-suggestion[.]"

The trial court concluded that "even if the three-prong Howerton test [was] technically met, the proposed evidence and expert opinion have become so attenuated that they lack probative value under Rule 403." Further, the trial court concluded that "the scientific aura surrounding repressed memory theory and an expert who would testify about it might become so firmly established in the minds of potential jurors that they may assign undue credibility to repressed memory evidence." The record fully supports the trial court's very thoughtful consideration of defendant's motion to suppress. As such, we hold that the trial court's grant of defendant's motion to suppress was not arbitrary, but was supported by reason and was in fact "the result of a [well-] reasoned decision." *Jacobs*, 363 N.C. at 823, 689 S.E.2d at 864. Accordingly, the trial court's decision is affirmed.

Affirmed.

Judge McCULLOUGH concurs.

Judge HUNTER, Robert C. dissents.

HUNTER, Robert C., Judge, dissenting.

After careful review, I must respectfully dissent from the majority opinion in this case because I disagree with the majority's determination that the trial court did not abuse its discretion in granting defendant's motion to suppress the evidence pursuant to Rule 403 of the North Carolina Rules of Evidence. The trial court abused its discretion when it determined that the expert testimony concerning the victim's repressed memories was admissible under Rule 702 and satisfied the

test set out in *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004), but still excluded the evidence under Rule 403 because the court was "troubled by the probative value of repressed memory theory and methodology."

Though not controlling, this Court's decision in *Barrett v. Hyldburg*, 127 N.C. App. 95, 487 S.E.2d 803 (1997), is instructive. There, the trial court excluded the testimony of the victim regarding her repressed memories and issued an order containing two determinations:

1) plaintiff's testimony as to her allegedly repressed memories was precluded absent accompanying expert testimony explaining to the jury the phenomenon of memory repression, and 2) expert testimony regarding repressed memory would be excluded because of the lack of scientific assurance of the reliability of repressed memory as an indicator of what has actually transpired in the past.

*Id.* at 99, 487 S.E.2d at 806. On appeal, this Court only addressed the first determination and held: "[W]e affirm the trial court's decision that plaintiff may not proceed with evidence of her alleged repressed memories of childhood sexual abuse without accompanying expert testimony on the phenomenon of memory repression[.]" *Id.* at 101, 487 S.E.2d at 807. Consequently, any victim, including the victim in the present case, is not permitted to testify about her repressed memories unless there is expert testimony to provide "the jury a basis to understand the phenomenon and evaluate the reliability of testimony derived from such memories." *Id.* at 101, 487 S.E.2d at 806.

While not explicitly set forth, *Barrett* indicates that repressed memory testimony *may* be admissible if *reliable* expert testimony is presented to explain the science behind retrieval of suppressed memories. The trial court judge in this case foreclosed any possibility that the victim's testimony could be presented despite the fact that the accompanying expert testimony was deemed reliable and relevant. He based this decision on his subjective apprehension regarding the science behind memory repression and not on the underlying facts of the case. This logic would lead to the exclusion of *all* memory repression testimony by a victim, who must have accompanying expert testimony, despite the reliability of the expert testimony. As stated in *Howerton*, 358 N.C. at 461, 597 S.E.2d at 688, "once the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable (and, of course, relevant), any lingering questions or controversy con-

cerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility."

Defendant and the majority opinion take the position that reversing this case would be tantamount to removing the trial court's gatekeeping function and discretion to invoke Rule 403 in these matters. That is not the case. Determining that the expert testimony is reliable and relevant does not mean that it is automatically admissible and all 403 safeguards are removed; however, the trial court should not be permitted to arbitrarily invoke Rule 403 because the trial court judge is "troubled" by the existence of controversy surrounding the science involved. Here, the trial court did not even consider the underlying facts of the case, including the victim's memories, claims of abuse, and the medical evidence that potentially supports her claims.

Based on the foregoing, this case should be reversed and remanded because the trial court abused its discretion by arbitrarily excluding the expert witnesses' testimony pursuant to Rule 403. Consequently, I must dissent from the majority's opinion.