STATE v. KING

[366 N.C. 68 (2012)]

STATE OF NORTH CAROLINA v. MELVIN CHARLES KING

No. 385A11

(Filed 14 June 2012)

### Evidence— recovered memory—expert testimony

The trial court properly granted defendant's motion to suppress expert testimony of recovered memory in a prosecution for first-degree rape, felony child abuse by committing a sexual act, incest, and indecent liberties where the trial judge assiduously sifted through expert testimony that lasted two days, thoughtfully applied the requirement of *Howerton v. Arai Helment, Ltd.*, 358 N.C 440, and then applied the N.C.G.S. § 8C-1, Rule 403 balancing test, explaining his reasoning at each step. Expert testimony is not an automatic prerequisite to the admission of lay evidence of sexual abuse so long as the lay evidence does not otherwise violate the statutes of North Carolina or the Rules of Evidence. However, unless supported by admissible expert testimony, the lay witness may testify only that he or she did not recall the incident for some period of time and may not testify that the memories were repressed or recovered.

Justice TIMMONS-GOODSON concurring.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 713 S.E.2d 772 (2011), affirming an order entered on 23 April 2010 by Judge John O. Craig, III in Superior Court, Moore County. Heard in the Supreme Court on 13 March 2012.

*Roy Cooper, Attorney General, by Anne M. Middleton, Assistant Attorney General, for the State-appellant.*

*Van Camp, Meacham & Newman, PLLC, by Patrick M. Mincey, for defendant-appellee.*

EDMUNDS, Justice.

In this case we consider whether the trial court abused its discretion when it granted defendant's motion to suppress expert testimony regarding repressed memory. Although we affirm the holding of the Court of Appeals majority that the trial court properly granted defendant's motion, we disavow the portion of the opinion that, relying on an earlier opinion of that court, requires expert testimony always

STATE v. KING

[366 N.C. 68 (2012)]

to accompany the testimony of a lay witness in cases involving allegedly recovered memories.

On 12 September 2005, defendant was indicted for first degree rape in violation of N.C.G.S. § 14-27.2(a)(1). Four years later, on 21 September 2009, he was indicted for additional charges of felony child abuse by committing a sexual act on a child, in violation of N.C.G.S. § 14-318.4(a2); incest, in violation of N.C.G.S. § 14-178; and indecent liberties with a child, in violation of N.C.G.S. § 14-202.1. Averments in pretrial motions filed in the case indicate that the victim, who is defendant's daughter and was born in 1988, began suffering panic attacks and pseudoseizures in March 2005. As these episodes continued, the victim began acting as if she were a young child, speaking of a "mean man" she worried would hurt her. During one episode, she identified a photograph of her father as the "mean man." After several visits to a variety of doctors and other medical providers, the victim was diagnosed with conversion disorder and referred to therapy.

Although the victim initially denied having experienced any sexual abuse, she recounted during a therapy session an event that occurred when she was seven years old and visiting defendant for the weekend in accordance with the custody arrangement between defendant and the victim's mother. The victim told the therapist that she recalled getting out of the bathtub and hurting herself in her "private area." She did not remember the exact facts of the incident or how the injury occurred, though she did remember her father telling her she had fallen. She also remembered bleeding and being taken to the emergency room by her mother, where she was treated for a superficial one-centimeter laceration to her vagina. When the therapist asked the victim what she would think about the incident if a friend had told her about it, the victim responded that she would "wonder about abuse," but added that she did not believe her father would do such a thing to her. The therapist then discussed with the victim how the mind can protect itself by "going somewhere else when something very difficult or painful might be happening."

About three weeks after this therapy session, the victim experienced her first "flashback" to the alleged events underlying the charges in this case. She said that when her boyfriend's arm brushed against her neck, the memory "hit" her that as she had been getting out of the bathtub, defendant entered the bathroom, lifted her up against the wall, threw her on the floor, put his arm across her chest to hold her down, and raped her. The victim also recalled that her

father had threatened to hurt her if she told anyone. After reporting this memory to her therapist, the victim was referred to the Moore County Department of Social Services, which initiated an investigation that resulted in the 2005 and 2009 indictments.

Defendant was scheduled to be tried on 1 February 2010. On 28 January 2010, he filed a motion to exclude testimony about " 'repressed memory,' 'recovered memory,' 'traumatic amnesia,' 'dissociative amnesia,' 'psychogenic amnesia' or any other synonymous terms the witnesses may adopt."[1] In his motion and in two memoranda submitted to support the motion, defendant argued that the phenomenon of repressed memory has generated significant controversy in the scientific community and thus is not sufficiently reliable to meet this Court's requirements for admission of expert testimony, as set out in *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 597 S.E.2d 674 (2004). Defendant contended that the theory of repressed memory is based upon "untested and flawed methods and unproved hypotheses" and is analogous to hypnotically refreshed testimony or polygraph test results, both of which this Court has found lack sufficient reliability to be admissible. *See State v. Peoples*, 311 N.C. 515, 532, 319 S.E.2d 177, 187 (1984) (rejecting hypnotically refreshed testimony); *State v. Grier*, 307 N.C. 628, 645, 300 S.E.2d 351, 361 (1983) (same for lie detector tests).

In response, the State submitted a memorandum in which it argued that dissociative amnesia is a legitimate scientific diagnosis that has been recognized by several other jurisdictions and by numerous highly respected scientific organizations, including the American Psychiatric Association, World Health Organization, and American Psychological Association. The State indicated that it intended to call as expert witnesses James A. Chu, M.D., an associate clinical professor of psychiatry at Harvard Medical School, and Desmond Runyan, M.D., a professor of Social Medicine and of Pediatrics at the University of North Carolina at Chapel Hill. Dr. Chu testified at the suppression hearing, as detailed below, and Dr. Runyan was expected to testify at trial that neither falling in the bathtub nor straddling its rim would be likely to cause the type of injury the victim suffered, and that sexual abuse was a more plausible explanation.

---

1. Although the parties and witnesses skirmished over the meaning of some of these terms, the trial court stated in its suppression order that "[b]oth parties agree that 'repressed memory' and synonymous terms are at issue when a witness intends to testify about a memory that he or she alleges to have about a traumatic event, is literally unable to remember the event for a long period of time afterwards, and then is later able to 'recover' the memory." Neither side has challenged the trial court's characterization and we will follow the trial court's convention.

**STATE v. KING**

[366 N.C. 68 (2012)]

The trial court conducted an evidentiary hearing on defendant's motion to suppress on 12 and 13 April 2010. Defendant presented Harrison G. Pope, Jr., M.D., a professor of psychiatry at Harvard Medical School, who was qualified as an expert in psychiatry, specifically on the issue of repressed memory. The State presented Dr. Chu, who also qualified as an expert in repressed memory. Each expert described his extensive experience and background in psychiatry and the field of repressed memory. Each also presented lengthy and detailed testimony about the nature of memory and the acceptance and status of the theory of repressed memory within the medical community. They disagreed about almost everything.

Although Dr. Pope has treated patients who report memory problems, the majority of his work has consisted of research. His testimony regarding repressed memory focused on his review of and opinion about studies that have been conducted on the topic, articles that he has authored assessing the methodologies of these studies, and a description of the frequency of reports of repressed memories. His study, which reviewed articles published between 1984 and 2003, found "practically no articles about repressed memory or dissociative amnesia up until 1992." A surge of reports followed, peaking in 1997, then falling off to "a fraction of their previous level." Although Dr. Pope acknowledged that some reputable scientists disagree with him, he was deeply skeptical of the existence of repressed memory as the term was used in this proceeding and testified that the theory of repressed memory is not generally accepted in the scientific community.

In contrast, Dr. Chu is primarily a clinician. He testified that in his clinical practice he frequently observed cases of repressed memory. Citing instances in which repressed memories of sexual abuse have been corroborated by family members who either committed or knew of the abuse, he stated that the condition, which he described generally as a conversion disorder, can be genuine and unfeigned. He testified that the "vast majority" of those in the scientific community, including academics and clinicians, accept the theory of repressed memory.

After hearing arguments from the State and from defendant, the trial court granted defendant's motion to suppress in an extensive oral order issued from the bench on 13 April 2010. On 23 April 2010, the trial court entered a written order making findings of fact and conclusions of law. In its written order, the court began by citing North Carolina Rule of Evidence 702, which controls admission of

expert testimony. N.C.G.S. § 8C-1, Rule 702 (2009).[2] The court then reviewed the three-step inquiry set out in *Howerton* to determine whether expert testimony is admissible under Rule 702. *See Howerton*, 358 N.C. at 458, 597 S.E.2d at 686 (citing *State v. Goode*, 341 N.C. 513, 527-29, 461 S.E.2d 631, 639-41 (1995)). The three prongs of the inquiry are: (1) whether the expert's proffered method of proof is sufficiently reliable; (2) whether the witness presenting the evidence qualifies as an expert in the applicable area; and (3) whether the testimony is relevant. *Id.* At the outset, the trial court readily concluded that the State's witness was an expert in the area of repressed memory, meeting the requirements of the second prong.

Turning then to the first prong, the judge reviewed case law from other jurisdictions pertaining to admission of expert testimony on repressed memory theory and summarized the expert testimony presented at the hearing on defendant's motion to suppress. The court found as fact that other jurisdictions have been inconsistent in whether, and on what bases, they have admitted expert testimony on repressed memory. The court further found that, while a significant dispute in the scientific community over the validity of the concept of repressed memory foreclosed a conclusion that the theory of repressed memory is generally accepted in the relevant scientific community, *Howerton* does not "dictate[ ] the degree to which a scientific theory must be accepted so as to make it established." Accordingly, the court concluded that "the theory of repressed memory may still be generally accepted enough to satisfy *Howerton's* reliability element."

In its consideration of the third prong, whether the evidence was relevant, the court noted that *Howerton* "defers to the traditional definition" set out in N.C.G.S. § 8C-1, Rule 401, and found that the evidence was relevant. However, the court then quoted N.C.G.S. § 8C-1, Rule 403 and observed that even relevant evidence may be inadmissible if the probative value of the testimony " 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.' " The trial court voiced three particular concerns. First, the court observed that purportedly repressed memories recovered during therapy are not validated by the treating clinician

---

2. We note that the General Assembly has amended Rule 702, adopting language similar to the corresponding Federal Rule of Evidence. *See* N.C.G.S. § 8C-1, Rule 702 (2011); *see also* Act of June 17, 2011, ch. 283, sec. 1.3, 2011 N.C. Sess. Laws 1048, 1049. Because the case at bar was decided under the earlier version of Rule 702, we need not now consider the impact of those amendments.

because the goal of clinical therapy is to treat the patient, not to determine if the patient's memories are accurate. Second, the reliability of the memories recovered is contingent upon the training and skill of the clinician treating the patient, subjective traits that are not dependable safeguards for assuring the veracity of the memories recovered. Finally, the court noted that the experts had discussed numerous alternative explanations for sudden memory recovery other than repressed memory, adding that "[t]hese alternate possibilities . . . create an additional layer of confusion that cannot be corroborated in a retrospective fashion that can assist the jury." Therefore, the trial court concluded as a matter of law that, even though evidence of repressed memory was relevant and "technically met" the *Howerton* test, the evidence must be excluded under Rule 403 because its probative value was outweighed by its prejudicial effect.

The State immediately appealed the trial court's suppression order to the Court of Appeals, believing it could not proceed to trial because of the holding of that court in *Barrett v. Hyldburg*, 127 N.C. App. 95, 100, 487 S.E.2d 803, 806 (1997). *State v. King*, —— N.C. App. ——, 713 S.E.2d 772 (2011). In *Barrett*, a civil action for assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress, all based upon the plaintiff's memories that allegedly had been repressed for over forty years, the Court of Appeals held that "testimony regarding recovered memories of abuse may not be received at trial absent accompanying expert testimony on the phenomenon of memory repression," 127 N.C. App. at 100, 487 S.E.2d at 806, because such expert testimony would be needed "to afford the jury a basis upon which to understand the phenomenon and evaluate the reliability of testimony derived from such memories," *id.* at 101, 487 S.E.2d at 806. The State indicated in its argument to the Court of Appeals that it believes that, once the trial court refused to admit expert testimony of repressed memory, *Barrett* would prevent the victim from testifying in the case. *King*, —— N.C. App. at ——, 713 S.E.2d at 777.

Although the Court of Appeals majority below "agree[d] with the [S]tate that *Barrett* held that repressed memory testimony 'must be accompanied by expert testimony,'" the majority noted that *Barrett* did not diminish the gatekeeping function of the trial court in determining the fundamental question of whether testimony is admissible. *Id.* at ——, 713 S.E.2d at 777 (quoting *Barrett*, 127 N.C. App. at 101, 487 S.E.2d at 806). Relying on our opinions in *Howerton*, 358 N.C. 440, 597 S.E.2d 674, and *Crocker v. Roethling*, 363 N.C. 140, 675 S.E.2d 625

(2009), the Court of Appeals majority stated that a trial court is required to "decide preliminary questions regarding the qualifications of experts to testify or regarding the admissibility of expert opinion." *King,* —— N.C. App. at ——, 713 S.E.2d at 777 (citing *Crocker,* 363 N.C. at 144, 675 S.E.2d at 629). The majority then considered whether the trial court abused its discretion when it excluded evidence of repressed memory because of the prejudicial effect of the evidence. *Id.* at ——, 713 S.E.2d at 777. The Court of Appeals majority held that the trial court's "detailed and specific findings of fact," its recognition of the duty *Howerton* imposes upon trial courts, its examination of authority from other jurisdictions, its careful consideration of the extensive yet conflicting expert testimony, and its expressed concerns about problematic aspects of repressed memory evidence, all led to the conclusion that the trial court's decision to grant defendant's motion "was not arbitrary" and was "fully support[ed]" by the record. *Id.* at ——, 713 S.E.2d at 777-78. Accordingly, the majority affirmed the trial court's order granting defendant's motion to suppress. *Id.* at ——, 713 S.E.2d at 778.

The dissenting judge disagreed, arguing that once the trial court determined the evidence was admissible under Rule 702 and *Howerton,* the court abused its discretion when it nevertheless excluded the evidence under Rule 403. *Id.* at ——, 713 S.E.2d at 778 (Hunter, Robert C., J., dissenting). The dissenting judge acknowledged that not all Rule 403 safeguards are removed once a preliminary decision is made regarding admissibility, but contended that a trial court "should not be permitted to arbitrarily invoke Rule 403 because the trial court judge is 'troubled' by the existence of controversy surrounding the science involved." *Id.* at ——, 713 S.E.2d at 779. The dissent pointed out that " 'questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility.' " *Id.* at ——, 713 S.E.2d at 779 (quoting *Howerton,* 358 N.C. at 461, 597 S.E.2d at 688). Accordingly, the dissent argued, the trial court's order should be reversed. *Id.* at ——, 713 S.E.2d at 779. The State appealed to this Court as of right based on the dissent.

A leading treatise on evidence in North Carolina acknowledges that "there can be expert testimony upon practically any facet of human knowledge and experience." 1 Henry Brandis, Jr., *Stansbury's North Carolina Evidence* § 134, at 438 (rev. ed. 1973) [hereinafter Brandis, *Stansbury's North Carolina Evidence*]. When making preliminary determinations on the admissibility of expert testimony,

"trial courts are not bound by the rules of evidence." *Howerton,* 358 N.C. at 458, 597 S.E.2d at 686 (citing N.C.G.S. § 8C-1, Rule 104(a) (2004)). In reviewing trial court decisions relating to the admissibility of expert testimony evidence, this Court has long applied the deferential standard of abuse of discretion. Trial courts enjoy "wide latitude and discretion when making a determination about the admissibility of [expert] testimony." *State v. Wise,* 326 N.C. 421, 432, 390 S.E.2d 142, 149 (citation omitted), *cert. denied,* 498 U.S. 853, 111 S. Ct. 146, 112 L. Ed. 2d 113 (1990); *see also State v. King,* 287 N.C. 645, 658, 215 S.E.2d 540, 548 (1975) (noting that " 'the determination of [whether to admit expert testimony] is ordinarily within the exclusive province of the trial judge'." (quoting Brandis, *Stansbury's North Carolina Evidence* § 133, at 429)), *judgment vacated in part,* 428 U.S. 903, 96 S. Ct. 3208, 49 L. Ed. 2d 1209 (1976). A trial court's admission of expert testimony " 'will not be reversed on appeal unless there is no evidence to support it.' " *King,* 287 N.C. at 658, 215 S.E.2d at 548-49 (quoting Brandis, *Stansbury's North Carolina Evidence* § 133, at 430). Thus, " 'the trial court is afforded wide discretion' in determining the admissibility of expert testimony and 'will be reversed only for an abuse of that discretion.' " *State v. Mackey,* 352 N.C. 650, 659, 535 S.E.2d 555, 560 (2000) (quoting *State v. Anderson,* 322 N.C. 22, 28, 366 S.E.2d 459, 463, *cert. denied,* 488 U.S. 975, 109 S. Ct. 513, 102 L. Ed. 2d 548 (1988)).

The test to determine whether proposed expert testimony is admissible was set out in *Howerton,* in which this Court rejected the federal standard for admission of expert testimony established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *Howerton,* 358 N.C. at 469, 597 S.E.2d at 693. *Howerton* approved the three-part test for determining admissibility of expert testimony described in *State v. Goode. Id.* at 458, 469, 597 S.E.2d at 686, 692 (citing *Goode,* 341 N.C. at 527-29, 461 S.E.2d at 639-41).

Applying this three-part test does not end the trial judge's inquiry, however, for even if the trial judge determines that expert testimony is relevant and admissible and otherwise meets the requirements of *Howerton* and Rule 702, "the trial court still must determine whether [the expert testimony's] probative value outweighs the danger of unfair prejudice to defendant" under Rule 403. *State v. Coffey,* 345 N.C. 389, 404, 480 S.E.2d 664, 673 (1997); *see also Anderson,* 322 N.C. at 28, 366 S.E.2d at 463 (noting that evidence may be excluded "if its probative value is outweighed by the danger that it would confuse the

issues before the court or mislead the jury"). "Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court." *State v. Penley*, 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986) (citing *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986)).

As detailed above, the trial court first acknowledged and then followed the requirements listed in *Howerton*. Upon reaching the question of general acceptance of the theory of repressed memory, the trial court observed that, although vigorous and even rancorous debate was ongoing within the relevant scientific community, *Howerton* did not require establishing either conclusive reliability or indisputable validity. As a result, the debate within the scientific community did not by itself prevent admission of evidence regarding repressed memory. Accordingly, the trial court turned to the final prong of *Howerton* and determined that the testimony was relevant. However, the court went on to conclude that, even though the *Howerton* test had been "technically met" and the evidence was relevant, the expert testimony was inadmissible under Rule 403 because recovered memories are of "uncertain authenticity" and susceptible to alternative possible explanations. The court further found that "the prejudicial effect [of the evidence] increases tremendously because of its likely potential to confuse or mislead the jury." The trial court therefore exercised its discretion to exclude the evidence about repressed memory on the grounds that the probative value of the evidence was outweighed by its prejudicial effect.

We conclude that the trial court did not abuse its discretion by granting defendant's motion to suppress after applying Rule 702, *Howerton*, and Rule 403. The test of relevance for expert testimony is no different from the test applied to all other evidence. Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2011). We agree with the trial court that the expert evidence presented was relevant. Nevertheless, like all other relevant evidence, expert testimony must satisfy the requirements of Rule 403 to be admissible. Although the dissenting judge in the Court of Appeals accurately pointed out that *Howerton* envisions admission of expert testimony on controversial theories, he also correctly noted that "not . . . all 403 safeguards are removed" when the *Howerton* factors apply. *King*, —— N.C. App. at ——, 713 S.E.2d at 779. If all other tests are satisfied, the ultimate admissibility of expert testimony in each case will still depend upon the relative weights of the prejudicial

effect and the probative value of the evidence in that case. Battles of the experts will still be possible in such cases. However, when a judge concludes that the possibility of prejudice from expert testimony has reached the point where the risk of the prejudice exceeds the probative value of the testimony, Rule 403 prevents admission of that evidence. The trial judge here assiduously sifted through expert testimony that lasted two days, thoughtfully applied the requirements set out in *Howerton* to that testimony, then applied the Rule 403 balancing test, explaining his reasoning at each step. We see no abuse of discretion and affirm the holding of the Court of Appeals that found no error in the trial court's decision to suppress expert testimony evidence of repressed memory.

In so holding, we stress that we are reviewing the evidence presented and the order entered in this case only. We promulgate here no general rule regarding the admissibility or reliability of repressed memory evidence under either Rule 403 or Rule 702. As the trial judge himself noted, scientific progress is "rapid and fluid." Advances in the area of repressed memory are possible, if not likely, and even Dr. Pope, defendant's expert, acknowledged that the theory of repressed memory could become established and that he would consider changing his position if confronted with a study conducted using reliable methodology that yielded evidence supporting the theory. Trial courts are fully capable of handling cases involving claims of repressed memory should new or different scientific evidence be presented.

Finally, we consider the holding of the Court of Appeals in *Barrett*, the case on which the State relied when it chose immediately to appeal the trial court's order of suppression rather than to continue to trial. *King*, —— N.C. App. at ——, 713 S.E.2d at 776 (majority) (citing *Barrett*, 127 N.C. App. at 95, 487 S.E.2d at 803). As noted above, *Barrett* was a civil case in which the plaintiff claimed that memories of improper sexual contact with her father, which had been repressed for approximately forty years, spontaneously emerged while she was watching a television program dealing with child sexual abuse. *Barrett*, 127 N.C. App. at 97, 487 S.E.2d at 804. The defendant father moved to exclude all evidence of the plaintiff's repressed memories, arguing that the evidence was inadmissible without accompanying expert testimony. *Id.* The trial court entered an order finding both that (1) the plaintiff's evidence of repressed memories would be precluded unless expert testimony was presented to explain the phenomenon, and (2) such expert testimony would be excluded because of the lack of scientific assurance that repressed

memories were reliable indicators of what actually had occurred in the past. 127 N.C. App. at 98-99, 487 S.E.2d at 805-06. The Court of Appeals affirmed the first part of the trial court's order, holding that the plaintiff could not testify as to recovered memories of abuse unless an expert also testified about the scientific basis of memory repression. *Id.* at 100, 487 S.E.2d at 806.

We agree with the holding in *Barrett* that the "plaintiff may not express the opinion [that] she herself has experienced repressed memory." *Id.* at 101, 487 S.E.2d at 806. As the trial court here noted, psychiatric theories of memory, and specifically of repressed and recovered memories, are arcane even to specialists and may not be presented without accompanying expert testimony to prevent juror confusion and to assist juror comprehension. That said, we believe the Court of Appeals went too far in *Barrett* when it added that "even assuming plaintiff were not to use the term 'repressed memory' and simply testified she suddenly in 1993 remembered traumatic incidents from her childhood, such testimony must be accompanied by expert testimony." *Id.* Although we know of no statute that guarantees a witness (other than a criminal defendant) the right to testify, if a witness is tendered to present lay evidence of sexual abuse, expert testimony is not an automatic prerequisite to admission of such evidence, so long as the lay evidence does not otherwise violate the statutes of North Carolina or the Rules of Evidence. *See* N.C.G.S. § 8C-1, Rule 601(a) (2011) (presuming a witness is competent to testify). However, unless qualified as an expert or supported by admissible expert testimony, the witness may testify only to the effect that, for some time period, he or she did not recall, had no memory of, or had forgotten the incident, and may not testify that the memories were repressed or recovered. Therefore, to the extent that the Court of Appeals majority here relied on the statement in *Barrett* that excluded *all* testimony based on recovered memory unless it was accompanied by expert testimony, we disavow that portion of the opinion.

Accordingly, should the State elect to retry the case on remand, the victim may testify as to her recollections. If so, the trial court may choose to reconsider its Rule 403 analysis in light of our holding. We are mindful that, in cases such as this, a defendant facing a witness who claims recently to have remembered long-ago events could seek to present an expert to address or refute the implications of the witness's purported sudden recall, thereby requiring the trial court to consider the admissibility of such evidence and possibly igniting a duel of experts. Because we believe such instances will be infrequent

and because the trial bench is fully capable of addressing such disputes as they arise, we do not attempt to catalog every possibility that could occur at trial.

For the reasons stated above, we modify and affirm the decision of the Court of Appeals that affirmed the trial court's grant of defendant's motion to suppress. We remand this case to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

MODIFIED AND AFFIRMED; REMANDED.

Justice TIMMONS-GOODSON concurring.

I concur with both the disposition and reasoning of the majority opinion with one exception. We need not address the holding of the Court of Appeals in *Barrett v. Hyldburg*, 127 N.C. App. 95, 487 S.E.2d 803 (1997), to resolve the issue before us.