IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-788

Filed 05 July 2023

Vance County, Nos. 18CRS51233-34, 18CRS51262, 18CRS51279, 18CRS703002-003

STATE OF NORTH CAROLINA

v.

RYAN LEE MATTHEW TAYLOR

Appeal by defendant from judgment entered 10 September 2021 by Judge Cynthia King Sturges in Vance County Superior Court. Heard in the Court of Appeals 24 May 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Jonathan J. Evans, for the plaintiff-appellee.*
>
> *Patterson Harkavy LLP, by Narendra K. Ghosh, for the defendant-appellant.*

TYSON, Judge.

Ryan Lee Matthew Taylor ("Defendant") appeals from judgments entered upon a jury's verdicts. We find no error in part, vacate in part, and remand.

## I. Background

Ashira Jefferson, Kasi Thompson, Elijah Brown, and Kaija Richardson were driving to drop Richardson off at 1:00 a.m. on 5 May 2018 after eating dinner and attending a movie with friends in Henderson. Jefferson was driving a Honda sedan with Brown seated in the passenger seat. Richardson was seated in the driver's side

rear seat, and Thompson was seated in the passenger's side rear seat.

Drake Branson was also separately leaving the movie theater with his wife. As Branson was waiting to turn onto Raleigh Road, he noticed a Chevrolet Tahoe with aftermarket blue tint headlights approaching on Raleigh Road. As the Tahoe passed his location, Branson noticed the Tahoe make an erratic movement into the left lane, emit a loud revving sound, and pass the car, which had just pulled out in front of Branson's car. Branson pulled onto Raleigh Road and a few minutes later encountered Jefferson's Honda sedan off of the roadway and stopped in Richardson's yard. Branson pulled over and called 911. The Honda sedan displayed severe damage to the back of the vehicle and the roof had lifted open. Thompson was laying outside of the car in a ditch near the roadway. The roadway was littered with debris ejected from inside the car.

Emergency Medical Services ("EMS") responded to the scene at 1:23 a.m. Jefferson suffered a broken jaw. Thompson was unconscious and unresponsive with an open injury to the back of her head. Brown was removed from inside of the Honda sedan, suffering with seizures, which indicated a "traumatic brain injury."

Thompson and Brown were transported to Maria Parham Hospital and later transferred by helicopter to Duke University Hospital in Durham. Thompson died approximately two hours after the wreck occurred. Brown died four days later.

North Carolina State Highway Patrol Troopers, Michael Wilder and Christopher Lanham, responded to the scene at approximately 1:25 a.m. The

troopers noticed a Chevrolet Tahoe with blue tint headlights located approximately fifty yards farther down Raleigh Road. The Chevrolet Tahoe had been driven through a fence and into the lot of a self-storage facility. The headlights on the Chevrolet Tahoe were illuminated, but the driver was not inside the vehicle nor at the scene. The troopers examined the Chevrolet Tahoe and determined no key was in the ignition and observed a cold six pack of beer in the front passenger side floorboard. Some of the containers had been opened. The vehicle had incurred severe front-end damage.

A canine unit was dispatched and a search was initiated for the vehicle's driver. The canine tracked a scent approximately one to two hundred yards through a barbed wire fence until encountering two railroad cars located on the other size of the U.S. Highway 1 Bypass bridge. Defendant was found lying under one of the railroad cars. Trooper Lanham ordered him to come out. Defendant was wearing a dark blue T-shirt and khaki shorts. Trooper Lanham searched Defendant and located his ID in his pocket, as well as a key that fit into the ignition switch of the Chevrolet Tahoe, which was registered to Defendant. Defendant's DNA profile was later matched to DNA found on the driver and passenger side airbags inside the wrecked vehicle. Defendant told officers he had been a passenger in the vehicle and had "paid [a security guard named] Rick $20 to give me a ride from [the] 85 Bar."

The troopers noted Defendant was uncooperative, combative, and refused to answer questions. Trooper Lanhan also noted a strong odor of alcohol on Defendant's

breath, his eyes were red and glassy, and his speech was slurred. Defendant admitted to consuming alcohol that evening. EMS accessed, treated, and transported Defendant to Maria Parham Hospital at 2:40 a.m. because of knee pain.

Defendant exhibited dangerous behavior at the hospital and was told to leave the emergency department. Defendant left and walked across the street to a Sheetz gas station at 3:05 a.m.

At 3:20 a.m., Trooper Wilder arrived at the hospital and discovered Defendant was no longer there, but located him across the street at the Sheetz gas station. Trooper Wilder placed Defendant under arrest and transported him to the magistrate's office. Defendant refused to provide a breath sample for chemical analysis. Trooper Wilder obtained a search warrant for Defendant's blood, which was drawn at Maria Parham Hospital at 4:56 a.m. The State Crime Laboratory ascertained Defendant's blood alcohol concentration to be .15 grams of alcohol per 100 milliliters of blood.

Trooper Wilder obtained a further search warrant for Defendant's cell phone on the afternoon of 6 May 2018. While executing that search warrant, Defendant told Trooper Wilder he would like to speak with him about the collision that had occurred. Defendant also admitted alcohol was involved in the crash. Defendant asserted the collision had occurred because "they pulled out in front of me." Defendant was unsure if the Chevrolet Tahoe had overturned during the wreck.

Trooper Wilder obtained still photographs from the camera located behind the

self-storage facility. The photographs showed the Chevrolet Tahoe stopping on the property and Defendant being the only individual depicted on the cameras. The photographs also showed Defendant attempting to climb a barbed wire fence.

Christopher Wilson, a security guard at Bar 85, testified for the State. Wilson was working at the bar on the night of the incident. Wilson observed Defendant enter the bar and saw him leave at approximately 12:04 a.m. Wilson stated Defendant was agitated about something, which had happened inside of the bar, and was "talking crazy." Defendant told Wilson "they won't let [him] back in, they [had kicked him] out." Defendant had a drink in his hand and left through the outdoor smoking section of the bar.

Defendant entered his Chevrolet Tahoe, backed into another vehicle parked behind him, and then drove forward. Defendant drove through the grass and a ditch instead of using the driveway exit onto the roadway from the parking lot.

Wilson also testified he had no knowledge of anyone named "Rick" being employed at Bar 85. While incarcerated after the accident, Defendant spoke with family members and discussed the accident, stating "if I wouldn't have had nothing to drink it would've been chalked up as just a[n] accident."

Defendant was indicted for two counts of felony death by motor vehicle, felony hit and run resulting in serious injury or death, reckless driving to endanger, failure to reduce speed, failure to comply with drivers license restriction, driving while impaired ("DWI"), and two counts of second-degree murder. A jury convicted

Defendant of all charges.

The trial court arrested judgment on the two convictions of felony death by motor vehicle due to the convictions for second-degree murder. Defendant was sentenced in the presumptive range to 180-228 months for each of the second-degree murders. Defendant's convictions for felony hit and run, failure to reduce speed, failure to comply with license restrictions, and reckless driving were consolidated for judgment and Defendant was sentenced to 19-32 months. Defendant was also sentenced to six months for the DWI, with all sentences running consecutively. Defendant appealed.

## II.     Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2021).

## III.     Issues

Defendant argues the trial court: (1) erred by admitting expert testimony on speed; (2) erred by admitting evidence of an alleged prior DWI; (3) lacked jurisdiction over the license restriction charge because of a defective indictment; (4) erred by failing to dismiss the license restriction charge; (5) erred by sentencing him as a prior record level II offender; and, (6) erred by imposing a Level Three DWI. Defendant also raised an ineffective assistance of counsel claim.

## IV.     Expert Testimony

### A. Standard of Review

"Trial courts enjoy wide latitude and discretion when making a determination about the admissibility of [expert] testimony." *State v. King*, 366 N.C. 68, 75, 733 S.E.2d 535, 539-40 (2012) (citation omitted). A trial court's ruling on Rule 702(a) is reviewed for abuse of discretion. *State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016). "A trial court may be reversed for abuse of discretion only upon showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) (citations omitted).

When error is asserted that "the trial court's decision is based on an incorrect reading and interpretation of the rule governing admissibility of expert testimony, the standard of review on appeal is *de novo*." *State v. Parks*, 265 N.C. App. 555, 563, 828 S.E.2d 719, 725 (2019) (citations omitted).

## B. Analysis

Defendant argues the trial court erred in allowing an expert witness to testify about the speed of the Chevrolet Tahoe based upon unreliable methodology. North Carolina Rule of Evidence 702 governs testimony by an expert witness at trial:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply
>
> (1) The testimony is based upon sufficient facts or data.

(2) The testimony is the product of reliable principles and methods.

(3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2021).

The Supreme Court of North Carolina has interpreted Rule 702(a) and examined Supreme Court of the United States' precedents interpreting Rule 702(a): *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136, 139 L. Ed. 2d 508 (1997); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238 (1999). Our Supreme Court held:

> the witness must be qualified as an expert by knowledge, skill, experience, training, or education. This portion of the rule focuses on the witness's competence to testify as an expert in the field of his or her proposed testimony. Expertise can come from practical experience as much as from academic training. Whatever the source of the witness's knowledge, the question remains the same: Does the witness have enough expertise to be in a better position than the trier of fact to have an opinion on the subject? The rule does not mandate that the witness always have a particular degree or certification, or practice a particular profession. But this does not mean that the trial court cannot screen the evidence based on the expert's qualifications. In some cases, degrees or certifications may play a role in determining the witness's qualifications, depending on the content of the witness's testimony and the field of the witness's purported expertise. As is true with respect to other aspects of Rule 702(a), the trial court has the discretion to determine whether the witness is sufficiently qualified to testify in that field.

*State v. McGrady*, 368 N.C. 880, 889-90, 787 S.E.2d 1, 9 (2016) (citations and quotation marks omitted).

State Patrol Trooper Roderick Murphy, who was not one of the two investigating troopers on the night of the wreck, was tendered and admitted as an expert in crash reconstruction at Defendant's trial. Trooper Murphy was allowed to testify over Defendant's objection that the Chevrolet Tahoe's speed exceeded the forty-five-mile-per-hour speed limit on the highway at the time of the crash.

Trooper Murphy also testified he "was unable to use either of the two scientific tests he had to determine the rate of speed and therefore would not be able to give an accurate answer." Trooper Murphy based his opinion on his nineteen years of experience in law enforcement, specialized training in the fundamentals, tools, and methods of crash reconstruction, prior experience of over thirty crash reconstruction conferences he had attended with exercises and demonstrations.

Trooper Murphy analogized the wreck with a comparable exercise wherein a Dodge Charger had struck a Chevrolet Tahoe. This rear-end collision occurred at a known speed, which resulted in less damage than the wreck at bar. Defendant argues this comparable is not substantially similar to meet the reliability requirements of *Daubert* and Rule 702(a).

Given the specifics of this accident, which made the two established methods unreliable to calculate speed, no objective equation was available to calculate the speed Defendant's Chevrolet Tahoe was traveling at the time of the crash. Trooper

Murphy did not give a specific speed, but gave an opinion based upon what he had observed and the speed and force necessary to inflict the extent of the rear end and roof damage observed to Jefferson's Honda sedan. Trooper Murphy's testimony established the principles and methods he had employed were "applied . . . reliably to the facts of the case[,]" per Rule 702(a)(3). N.C. Gen. Stat. § 8C-1, Rule 702(a)(3) (2021). Defendant was fully able to cross-examine and challenge this testimony and has failed to show the trial court abused its discretion by admitting this opinion testimony.

## V. Rule 404(b)

Defendant argues the trial court erred in admitting evidence of a prior 2017 DWI incident, as not admissible under Rule 404(b). *See* N.C. Gen. Stat. § 8C-1, Rule 404(b) (2021).

### A. Standard of Review

Our Supreme Court has held:

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusions that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

### B. Analysis

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2021).

The trial court admitted, over Defendant's objection, information about a pending 2017 DWI charge. The State argues the evidence of Defendant's prior traffic offenses is properly admitted under Rule 404(b) to show his intent, knowledge, or absence of mistake to support malice, an essential element of second-degree murder. Defendant argues the pending 2017 DWI charge is not "sufficiently similar to the circumstances at issue." *State v. Locklear*, 159 N.C. App. 588, 594, 583 S.E.2d 726, 731 (2003), *aff'd per curiam*, 359 N.C. 63, 602 S.E.2d 359 (2004).

This Court has allowed pending charges to be admitted to show malice, as long as the evidence is admissible under Rule 404(b). *See State v. Grooms*, 230 N.C. App. 56, 64, 748 S.E.2d 162, 168 (2013) ("our appellate courts have also upheld the admission of evidence of a defendant's pending charge for DWI to show malice when the circumstances surrounding the pending charge were sufficiently similar to those surrounding the charged offense.") (citation omitted).

In *State v. Jones*, evidence of the defendant's pending charge of driving while intoxicated was introduced to establish that the defendant had acted with malice. Our Supreme Court held the introduction of such evidence demonstrated: "that

defendant was aware that his conduct leading up to the collision at issue here was reckless and inherently dangerous to human life. Thus, such evidence tended to show malice on the part of defendant was properly admitted under Rule 404(b)." 353 N.C. 159, 172-73, 538 S.E.2d 917, 928 (2000). Defendant's argument is overruled.

## VI.    Indictment of License Restriction Charge

Defendant argues, and the State concedes, the indictment for the license restriction charge and conviction was facially invalid. Defendant's conviction and judgment for failure to comply with license restrictions is vacated. Defendant's judgment, which consolidated this offense with other valid convictions and sentences imposed, is also vacated and this cause is remanded for resentencing. Defendant's additional arguments, including his assertion of an ineffective assistance of counsel ("IAC") claim, relate to the indictment of the license restriction charge, which we are vacating due to the State's concession, are dismissed as moot.

## VII.    Sentencing as Prior Record Level II

Defendant argues, and the State also concedes, the trial court erred by sentencing him as a prior record level II. The State concedes the trial court should have sentenced Defendant as a prior record level I. Defendant's judgments are vacated and upon remand is to be resentenced at the proper prior record level.

## VIII.    Level Three DWI Sentence

Defendant argues, and the State further concedes, the trial court erred by imposing a level three DWI sentence and the court should have imposed a level four

DWI sentence. Defendant's DWI sentence is vacated and remanded to be resentenced at the proper level.

## IX. Conclusion

The trial court did not err or abuse its discretion in admitting Trooper Murphy's testimony concerning Defendant's estimated vehicle speed. The trial court also did not err in admitting evidence of an alleged and pending prior DWI charge to show malice, knowledge, or absence of mistake under Rules of Evidence 404(b) and 403.

Defendant received a fair trial free from prejudicial error for his convictions of two counts of second-degree murder in 18-CRS-05126 and 18-CRS-051279; felony hit and run resulting in serious injury or death in 18-CRS-051234, DWI in 18-CRS-051233; reckless driving to endanger in 18-CRS-703002; and, failure to reduce speed in 18-CRS-703003. The State concedes the license restriction violation indictment was facially invalid and the trial court did not possess jurisdiction to enter judgment thereon.

The trial court erred in sentencing Defendant as a prior record level II offender. The trial court also erred when it sentenced Defendant as a level three DWI offender. Defendant's judgments, consolidated with his failure to comply with his license restrictions violation conviction, are vacated and remanded.

All of Defendant's judgments are remanded for resentencing. Defendant's remaining challenges of error are dismissed as moot or not argued. *It is so ordered.*

NO ERROR IN PART, VACATED IN PART, AND REMANDED FOR RESENTENCING.

Judges ZACHARY and STADING concur.