IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-224

Filed 7 May 2024

Davie County, No. 19CRS000268

STATE OF NORTH CAROLINA

v.

PHIL JAY HEYNE

Appeal by Defendant from judgment entered 30 August 2022 by Judge Lori I. Hamilton in Davie County Superior Court. Heard in the Court of Appeals 10 January 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Kristin J. Uicker, for the State-Appellee.*

*Mark Hayes for Defendant-Appellant.*

COLLINS, Judge.

Defendant Phil Jay Heyne appeals from a judgment entered upon a jury verdict finding him guilty of first-degree rape. Defendant argues that the trial court plainly erred by admitting lay witness testimony of repressed memories without expert support, that the trial court erred by allowing certain lay witness opinion testimony, and that the trial court erred by allowing the prosecutor to make improper and prejudicial remarks during the State's closing argument. We hold that Defendant received a fair trial free from prejudicial error.

## I. Background

In August 2017, Amber[1] contacted law enforcement to report that Defendant had sexually assaulted her in 2003 while she was at a sleepover with Defendant's daughter at Defendant's house. Defendant was indicted for first-degree rape in May 2019 and tried in August 2022.

Amber testified at trial to the following: When Amber was in the sixth grade, Defendant's daughter invited her to sleep over at her house. Amber's family had dinner with Defendant's family before the sleepover and then Amber's parents gave her a cell phone before leaving her at Defendant's house. Amber and Defendant's daughter played in the basement until Defendant's wife came downstairs and told them that it was time for bed. On their way up the stairs, Defendant's daughter informed Amber that they would be sleeping in separate rooms, which made Amber uncomfortable.

At some point during the night, Amber heard the bedroom door open and felt "a presence of somebody inside" the room. The person checked if Amber was asleep and then got into bed with her. The person began touching Amber's thigh and hip area, then turned her onto her back, got on top of her, and put his hand over her mouth. Amber opened her eyes and recognized that the person on top of her was Defendant. Defendant removed Amber's shorts and underwear and "put his penis in

---

[1] A pseudonym is used to identify the prosecuting witness. *See* N.C. R. App. P. 42(b)(3).

- 2 -

[her] vagina." Amber described feeling "a lot of pain" in her vaginal area and wanting to scream, but she "couldn't find a way to say anything." After Defendant stopped, he sat on the edge of the bed and told Amber that nobody would believe her and that "he would never do this to his own daughters because they were better than [she] was."

The next morning, Amber noticed blood on her sheets, which confused her. Defendant's wife then came into the room and insisted that Amber take a shower before returning home, but Amber "didn't want to be alone in that house anymore," so she refused. Defendant's wife attempted several more times that morning to convince Amber to shower before Amber's mother arrived and Amber left the house. Amber did not tell her parents the extent of what had happened at Defendant's house, mentioning only that she wanted to come home early because she had been uncomfortable sleeping in a bedroom by herself.

Amber testified that she developed disordered eating behaviors beginning in seventh grade, for which she sought treatment from a partial hospitalization program at UNC during the summer of 2009 before beginning college. During her first year of college, Amber attended an eating disorder support group and engaged in individual therapy with the counselor who led the support group. That spring, Amber told the counselor about the incident at Defendant's house after having seen Defendant's family in Walmart. Amber also told her parents and several other women about the incident, several of whom testified at trial about what Amber had

told them.

Defendant testified that he had "zero recollection" of hosting Amber's family for dinner or Amber ever spending the night at his house. His wife and daughters also testified that Amber had never spent the night. Three other witnesses who had known Defendant for over 25 years each testified that Defendant had a reputation for being a truthful, law-abiding citizen.

The jury returned a verdict finding Defendant guilty of first-degree rape, and the trial court sentenced Defendant to 192 to 240 months' imprisonment. Defendant gave oral notice of appeal.

## II. Discussion

### A. Repressed Memory Testimony

Defendant first argues that the trial court plainly erred by admitting lay witness testimony of repressed memories without expert support.

#### 1. *Standard of review*

In criminal cases, an unpreserved error "may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable

impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citations omitted).

### 2. *Analysis*

Defendant argues that pursuant to this Court's holding in *Barrett v. Hyldburg*, 127 N.C. App. 95, 487 S.E.2d 803 (1997), a party may not present lay witness testimony of repressed memories without accompanying expert testimony explaining the phenomenon of memory repression.

In *Barrett*, the plaintiff claimed that she had spontaneously recovered memories of sexual abuse that had occurred over 40 years earlier. 127 N.C. App. at 97, 487 S.E.2d at 804. This Court held that the "plaintiff may not express the opinion [that] she herself has experienced repressed memory[,]" and added that, "even assuming plaintiff were not to use the term 'repressed memory' and simply testified she suddenly . . . remembered traumatic incidents from her childhood, such testimony must be accompanied by expert testimony on the subject of memory repression . . . ." *Id.* at 101, 487 S.E.2d at 806.

Our Supreme Court modified this rule in *State v. King*, 366 N.C. 68, 733 S.E.2d 535 (2012). In *King*, the defendant's teenage daughter was referred to therapy after she began suffering panic attacks and pseudoseizures. 366 N.C. at 69, 733 S.E.2d at 536. In therapy, the daughter initially denied having experienced any sexual abuse. *Id.* About three weeks later, the daughter experienced a "flashback" to an incident that had occurred when she was seven years old: she recalled getting out of the

bathtub when the defendant "entered the bathroom, lifted her up against the wall, threw her on the floor, put his arm across her chest to hold her down, and raped her." *Id.* The daughter reported this memory to her therapist, which triggered an investigation resulting in criminal charges against the defendant. *Id.* at 70, 733 S.E.2d at 536.

The defendant filed a pretrial motion to exclude testimony about "'repressed memory,' 'recovered memory,' 'traumatic amnesia,' 'dissociative amnesia,' 'psychogenic amnesia' or any other synonymous terms the witnesses may adopt." *Id.* at 70, 733 S.E.2d at 536-37. The trial court conducted an evidentiary hearing on the motion where the defendant and the State each presented expert testimony concerning the theory of repressed memory. *Id.* at 71, 733 S.E.2d at 537. After hearing the parties' arguments, the trial court determined that, although the expert testimony was admissible under North Carolina Evidence Rule 702, the evidence must be excluded under North Carolina Evidence Rule 403 because its probative value was outweighed by its prejudicial effect. *Id.* at 71-73, 733 S.E.2d at 538.

The State appealed, arguing that under *Barrett*, the trial court's decision to exclude the expert testimony would prevent the victim from testifying about the incident that had occurred when she was seven years old. *Id.* at 73, 733 S.E.2d at 539. On appeal, our Supreme Court disavowed the notion that all testimony based on repressed memory must be excluded unless it is accompanied by expert testimony. *Id.* at 78, 733 S.E.2d at 542. Explaining that *Barrett* "went too far," the Court clarified

that, "if a witness is tendered to present lay evidence of sexual abuse, expert testimony is not an automatic prerequisite to admission of such evidence, so long as the lay evidence does not otherwise violate the statutes of North Carolina or the Rules of Evidence." *Id*. at 78, 733 S.E.2d at 541-42 (citation omitted).

The Court announced that a witness may testify as to their recollection of an incident, and "to the effect that, for some time period, he or she did not recall, had no memory of, or had forgotten the incident," without expert support. *Id*. at 78, 733 S.E.2d at 542. However, unless qualified as an expert or supported by admissible expert testimony, a witness "may not testify that the memories were repressed or recovered." *Id*.

In the instant case, Defendant argues that under *Barrett*, the entirety of Amber's testimony related to repressed and recovered memories, and therefore required expert testimony for support. However, in *King*, our Supreme Court relaxed the strict rule articulated in *Barrett*. Accordingly, we review the testimony presented at Defendant's trial to determine whether it required expert support under *King*.

At Defendant's trial, Amber testified as to her recollection of the night she spent at Defendant's house and that she did not immediately report the incident. When asked why she had not said anything for so long, Amber responded:

> I think there's several reasons. I think partially because I didn't have the words to say anything. I didn't know how to articulate what had happened. I think partially because once that first hour passed where I hadn't said anything, how could I possibly bring it up now? Once that first day

passed, how do you bring it up? That first month, that first year. It felt like if I hadn't said anything that first moment when I saw my mom, then how could I ever say it to her? Like who could believe me?

Amber also explained the impetus behind her decision to come forward when she did:

> [STATE]. What caused you to finally come forward?
>
> [AMBER]. Well, I think understanding how eating disorders work now, my brain was really foggy from not eating for so long. And at some point in the spring of my freshman year of college when I was in a much healthier place, it all like flooded back. I remembered the rape and so I spoke with my therap[ist] about it first.
>
> [STATE]. When you say it all flooded back to you, was there a moment that this happened? Was there an accumulation? What was that?
>
> [AMBER]. Yes, I was actually in Wal[m]art. I had seen [Defendant's] family in Wal[m]art at some point. I hadn't seen them pretty much since sixth grade because they had not -- I don't know where they went. I don't know what school they ended up going to or anything like that. But I did see them. I don't know if it was that day or if it was after that day, but I was walking down the frozen food aisle with my mom and it just, all the sensations kind of came back and his face above me came back. I felt like I was kind of there in that moment.

Amber recounted what she said to her therapist after seeing Defendant's family in Walmart:

> [STATE]. You said at that time that you told [your therapist] the pieces of this incident that you recall. Do you remember here on the stand today what you told her happened that night.
>
> [AMBER]. I was really clear that there were pieces that I

always remembered. Especially the night before and the morning after. Those pieces never left my brain. Those were the pieces that I was pretty open about always; that I had slept in the room by myself, that her mom had made me really uncomfortable by asking me to take a shower so many times. But the piece that I remember specifically was him above me and looking at the pink curtains and the sensations of my body. That kind of went with that.

Amber also described how she processed her memories of the incident:

[STATE]. So you talked to your therapist about some other trauma-based approaches to help you process this?

[AMBER]. Yes.

[STATE]. Did you end up engaging in those things?

[AMBER]. I did. I tried a couple of different things.

[STATE]. And in doing those things, were you able to solidify more of your memory?

[AMBER]. The best way I've solidified my memory is through talking. And the more I've shared the experience, the more some of those pieces that weren't connected, connected back. I did participate in a therapy called EMDR. And it did not really help me -- the goal of that therapy is not necessarily to remember the pieces. It's more to process the pieces.

So in that moment -- I did that early in college, and that part didn't -- I don't know how to explain it. It didn't help me remember pieces, it helped me process the things I already remembered.

As Defendant concedes, at no point did Amber testify that she had repressed memories or that she had recovered repressed memories. Instead, Amber testified as to her recollection of the incident, and that she was "really clear that there were pieces that [she] always remembered." Under *King*, this type of testimony did not require expert support. *See id.*

Defendant also argues that a portion of the State's evidence offered to corroborate Amber's substantive testimony referenced a repressed memory and was therefore inadmissible without expert support.

At trial, Barbara Layman, a family friend, testified about what Amber had told her about the incident:

> And she told me that in therapy she had remembered going to this family's house to spend the night with the daughter, and during the night the dad had come in and raped her. That she remembered that in therapy. And she told me details, like she remembered the time on the clock, the fact that they did not sleep -- the parents did not let the daughter and her sleep in the same room. She had to sleep in a separate room. That the dad told her that there was no point in her telling anybody because nobody would ever believe her. The mom really pushed for them to shower the next morning before she went home. And she said she remembered at the time, like, thinking all this stuff is really strange.

Layman added:

> And as it came back to her, more and more of it made sense, and she was just -- in one way, I think she was relieved because she finally had some answers. And then she was just terrified at how this had happened to her and how her memory had -- her subconscious had been so strong at protecting her that she had repressed this memory. But she was incredibly upset and had some really clear memories once it started coming back.

Even assuming arguendo that Layman's remark that Amber "had repressed this memory" was erroneously admitted, Defendant has failed to show "that, after examination of the entire record, the error had a probable impact on the jury's finding

that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quotation marks and citations omitted).

Layman's testimony was not admitted as substantive evidence of Defendant's guilt but rather as corroboration for Amber's substantive testimony. The trial court explained this to the jury when Layman testified:

> Ladies and gentlemen, evidence has been received tending to show that at an earlier time, a witness made a statement which may conflict or be consistent with the testimony of the witness at this trial. You must not consider such earlier statement as evidence of the truth of what was said at that earlier time, because it was not made under oath at this trial. If you believe the earlier statement was made and that it conflicts or is consistent with the testimony of the witness at this trial, you may consider this and all other facts and circumstances bearing upon the witness's truthfulness in deciding whether you will believe or disbelieve the witness's testimony.

Defendant reiterated the trial court's instruction in his closing argument:

> And the State has presented multiple witnesses and they say that [Amber] told them that she was raped by [Defendant]. Now, there's a special jury instruction on this, because you need a special warning about these prior consistent statements, because the judge is going to tell you you are not to take those prior statements as truth, because they were not under oath. They're just something for your consideration, but not for the truth of what was said. So listen carefully.

Thus, the jury was properly instructed not to consider Layman's testimony as substantive evidence that Amber had experienced repressed memory. As jurors are presumed to follow the trial court's instructions, *State v. Parker*, 377 N.C. 466, 474,

858 S.E.2d 595, 600 (2021), we cannot say that the erroneous remark had a probable impact on the jury's verdict. Accordingly, admitting Layman's testimony did not amount to plain error. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

**B. Lay Witness Opinion Testimony**

Defendant next argues that the trial court abused its discretion by allowing a lay witness to give certain opinion testimony.

"We review the trial court's decision to admit [lay opinion testimony] evidence for abuse of discretion, looking to whether the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Delau*, 381 N.C. 226, 236-37, 872 S.E.2d 41, 48 (2022) (alteration in original) (citation omitted). A lay witness may testify in the form of "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of [their] testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2022).

At trial, Jordan Hemmings, a domestic violence victim's advocate, testified about accompanying Amber to law enforcement:

> [STATE]. And so when you got to the police department, if you could walk the jury through what happened when you got there.
>
> [HEMMINGS]. So when we got there, we explained that we wanted to talk to an officer about the sexual assault that she -- that [Amber] wanted to report. Once we got there, we talked to an officer. I remember it was Logan Fox. We talked to her. [Amber] disclosed the sexual

assault. I remember then she stated that it was -- it happened when she was twelve and she was brought in -- or she went to her friend's house for a sleep-over. And when she was asleep, she had been asleep for a short time and the friend's dad came in and took her clothes off and sexual assaulted her or raped her.

And then she was very tearful. She was upset, obviously. She said she never went back to that home again. She didn't remember a lot of the details, which is normal because it happened so long ago.

Defendant argues that "Hemmings had no basis, personal or professional, for drawing any conclusions about what was 'normal.'"

Here, Hemmings described her experience with Amber at the police station and expressed her opinion that Amber's lack of detailed memory was normal because it happened so long ago. The trial court could reasonably have considered Hemmings' opinion was based on her rational perception that memories fade with time. Thus, the trial court did not abuse its discretion by admitting Hemmings' lay opinion testimony. *See id.*

## C. Closing Argument

Defendant finally argues that the trial court abused its discretion by overruling his objection to the prosecutor's remarks during the State's closing argument that Amber's eating disorder, issues with picking and cutting, and nightmares were consistent and credible responses to being raped.[2]

---

[2] Defendant also argues in passing that the prosecutor improperly referenced repressed memories during the State's closing argument. However, Defendant did not timely object to the

"The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations omitted). "When applying the abuse of discretion standard to closing arguments, this Court first determines if the remarks were improper." *Id.* "Next we determine if the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court." *Id.* (citations omitted).

"Generally, prosecutors are given wide latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom." *State v. Goss*, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007) (quotation marks and citation omitted). A prosecutor may not, however, argue "facts which are not supported by the evidence." *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (citations omitted).

Defendant objected after the following statement:

> What do we know about [Amber]? We know she had the eating disorder. We know she had extreme issues with excessive picking, with cutting, with nightmares. Are these consistent and credible responses to a 12-year-old

---

reference, and he does not argue on appeal that the trial court failed to intervene ex mero motu. *See State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) ("The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene ex mero motu." (citation omitted)). Thus, any argument based on the prosecutor's reference to repressed memories during closing argument is deemed abandoned. *See* N.C. R. App. P. 28(a).

being raped? Yes, absolutely they are.

Defendant argues that the prosecutor argued facts which are not supported by the evidence because no evidence was presented that Amber's behaviors were responses to rape. However, the prosecutor did not assert as fact that Amber's behaviors were responses to rape. The prosecutor recounted facts that were admitted into evidence: that Amber had an eating disorder, issues with picking and cutting, and nightmares. The prosecutor then argued a reasonable inference from these facts that Amber's behaviors may have been responses to a rape. Accordingly, the trial court did not abuse its discretion by overruling Defendant's objection.

Furthermore, even if the prosecutor's argument had been improper, the challenged statements comprised only two sentences of a closing argument that spanned 23 transcribed pages. The majority of the State's closing argument focused on bolstering Amber's credibility by highlighting the consistent version of events told by several of the State's witnesses at trial. Given the small role the challenged statements played in the State's closing argument, the remarks were not of such magnitude that their inclusion prejudiced Defendant. *See Jones*, 355 N.C. at 131, 558 S.E.2d at 106.

### III.   Conclusion

For the foregoing reasons, Defendant received a fair trial free from prejudicial error.

NO PLAIN ERROR IN PART; NO ERROR IN PART.

Judges HAMPSON and THOMPSON concur.